OPINION OF THE COURT
Sondra Miller, J.
Tara H., five years old, was diagnosed as having infectious gonorrhea after a hospital physician discovered a yellow/ green vaginal discharge. Westchester County Child Protective Services petitioned for temporary removal of the child pursuant to Family Court Act § 1022. The father, her sole guardian, applied for the immediate return of the child. A petition alleging sexual abuse was filed by the Department of Social Services and a hearing was held within 72 hours on the father’s application for the return of the child pursuant to Family Court Act § 1028. The court assigned counsel to respondent and appointed a Law Guardian to the child. Two Child Protective Services caseworkers testified to out-of-court *509 statements made by the child implicating the father. They urged an immediate validation of the child’s complaints by an expert.
The Law Guardian selected a qualified expert, specifically skilled and trained in child sex abuse cases, to validate the complaint. Counsel for respondent did not object to the qualifications of the expert or to the validation process. At a subsequent hearing, after learning the results of the validation interview, respondent’s counsel (assigned counsel had been replaced by retained counsel) asked for an adjournment to obtain a second expert to conduct a second interview. The Law Guardian and petitioner vigorously opposed the application on the grounds that it would subject the child to additional harmful stress and that the expert chosen was independent of the parties, having been selected by the Law Guardian in a procedure agreed to in open court. The court denied respondent’s oral application for a second validation for the following reasons:
A second validation interview would be adverse to the best interests of the child in this case. The validation process requires that the child establish a relationship with the expert. It necessitates the child’s recounting and reliving the traumatic incidents suffered. She must overcome fear, guilt and embarrassment. Multiple validations would subject a truthful child to another form of child abuse. The child would interpret the compulsory subsequent interviews as a challenge to her veracity. On the other hand, a child fabricating such abuse must be severely emotionally disturbed and could be seriously traumatized by continuous probing. There is no reason to assume that the independent expert selected by the court or Law Guardian is less able to identify a child’s mendacity than any other expert selected by the parties.
A validation interview is not a scientific test such as a ballistics or fingerprint report, clearly subject to challenge by independent experts. The subject is a child, not physical evidence capable of scientific testing and retesting without injury or trauma. The reliability of such interviews depends upon the ability of the validator, who should be experienced and trained to interrogate children subjected to abuse. The qualifications of the validator in the instant case were not objected to by the respondent either at the section 1028 hearing, where the expert was subject to cross-examination, or thereafter.
*510 Denying the respondent the opportunity for a second validation is not a violation of his fundamental constitutional due process rights. He is not entitled to "confrontation” of the child in an abuse proceeding pursuant to Family Court Act article 10. To the contrary, the statute specifically protects the child from such confrontation and the formality of other types of proceedings. Family Court Act § 152 (b) provides that the judge may dispense with the formality of placing a minor under oath before taking his testimony (in contrast to the general rule in civil cases that the unsworn testimony of a child is inadmissible). The child’s prior out-of-court statements are admissible in evidence pursuant to Family Court Act § 1046 (a) (vi), contrary to the general hearsay prohibition against admissibility of such statements. A petition alleging abuse or neglect may be sustained even in the absence of the child’s allegations if the case falls within the "res ipsa” doctrine codified in Family Court Act § 1046 (a) (ii).
No authority bearing directly on the issue of respondent’s right to a second validation has been identified, although a similar issue was raised in Matter of Maria F. (104 Misc 2d 319 [Fam Ct, Bronx County 1980]). There a Law Guardian’s motion for a protective order to deny respondent’s application for an examination before trial of a 12-year-old child in an abuse proceeding was granted. The court found that such a proceeding would be traumatic to a child of tender age and might result in harm to the child’s well-being.
THE HEARING
The expert testified that the child indicated fear of her father, initially refusing to speak of things that happened with him and stating "He’d hit me — He’d kill me”. Tara exhibited a "cluster of behaviors” identified with children who have been sexually abused. This observation was based upon the child’s tone of voice, eye contact, and general demeanor when questioned about her father. She found the child’s behavior "obsessive-compulsive”, and indicated that Tara was overwhelmed by external stimuli, a condition common to traumatized children. The expert found that the child had been sexually abused; that she was frightened, and specifically frightened of her father, and that the father was the most likely perpetrator.
A picture drawn by Tara of her father (in evidence) was produced for the expert to examine. The drawing of the child’s *511 father depicted his genitalia with greater detail than any other part of his anatomy. The expert stated that a child of five would not portray sexual organs in such detail unless she were sexually preoccupied and that the drawing itself indicated the child had been sexually molested. The expert found Tara’s testimony unrehearsed and the child’s affect (behavior —which cannot be rehearsed) consistent with that of a sexually molested child.
The validator was qualified as an expert without objection. Holding a Masters in social work, she is a doctoral candidate in advanced practice at the Columbia University School of Social Work. Her doctoral dissertation is on "Intrafamilial Sexual Abuse”. She received a certificate in the treatment of family sex abuse at the University of Minnesota program in human sexuality. For the past four years she consulted and gave in-service training regarding identification, early intervention and treatment of sexually abused children and their families to professionals in mental health and related fields. In her private practice she has provided psychosexual assessment and psychotherapy to sexually abused children and their families, and to incest survivors and their families. She is a noted lecturer on the subject of sexual abuse. She has evaluated approximately 100 children.
A Federal employee of the Center for Disease Control testified that he had reviewed the results of tests performed on Tara, which indicated infectious gonorrhea, that this disease is transmitted solely by sexual contact, e.g., penis to throat, vagina or rectum, that the child could have had the disease for a substantial number of months without suffering complications, and that a male who had contracted gonorrhea could be cured within a period of 24 hours if on medication.
A Child Protective Services caseworker, who had interviewed Tara on six occasions, testified Tara told her that she had bathed nude with her father, that he "played” with her genitals, and showed her how to "play” with his, he had attempted penetration, but that she pushed him away because "it hurt”. While visiting with the child at the foster home, the child had drawn the picture of her father, which had been exhibited to the validator.
The respondent testifying on his own behalf vehemently denied any sexual contact with Tara. He had been convicted of numerous crimes, including armed bank robbery and several assaults. He was a reformed alcoholic who attended *512 meetings of Alcoholics Anonymous three to four times a week. When incarcerated in March 1982 he had voluntarily placed Tara in foster care. Immediately upon his release from jail in September 1983 he sought her release. She lived with him from that time until July 1984, the date of her emergency removal, a period of less than one year. Respondent introduced evidence that he did not have gonorrhea when examined immediately after Tara’s condition was diagnosed as positive. The respondent spoke intelligently and convincingly of his concern for his child, and provided three "character witnesses” who testified that he had a reputation for honesty in the community.
THE IN CAMERA INTERVIEW
After the hearing, the court held an in camera interview with Tara, in the presence of the caseworker. Tara described sexual contacts with her father. She demonstrated in pantomime the manner in which she was taught to masturbate her father. The child appeared highly intelligent and verbal, but hyperactive. She reacted notably differently to myself and the caseworker (both female) than she did to the court reporter, who was male. I explained to Tara that it was my intention to do what I could to help her and that it was important that I learn the truth. Tara drew a sketch of her father very similar to the one introduced into evidence by the petitioner, which sketch depicted the father’s genitalia in detail. She told me she wanted a "new Daddy”. The interview was transcribed.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
Tara H. is found to be an abused child pursuant to Family Court Act § 1012 (e) (iii), in that the respondent committed a sex offense against her as defined in Penal Law § 130.65, constituting sexual abuse in the first degree, having subjected his five-year-old daughter to sexual contact. (Penal Law § 130.00 [3].) This finding, supported by clear and convincing evidence, is based upon the following:
1. Petitioner’s prima facie case was established by the fact that five-year-old Tara contracted infectious gonorrhea while in the custody of her father, which condition was not satisfactorily explained by him. Family Court Act § 1046 (a) (ii) provides "proof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions *513 of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect”. This statutory provision codifies prior case law which held that the doctrine of res ipsa loquitur was applicable to certain cases, where the child suffered traumatic injuries typically associated with physical assaults, and the injuries were not satisfactorily explained by the person responsible for the child’s care. (Matter of S., 46 Misc 2d 161 [Fam Ct, Kings County 1965]; Matter of Young, 50 Misc 2d 271 [Fam Ct, Westchester County 1966]; Matter of Vulon, 56 Misc 2d 19 [Fam Ct, Bronx County 1968].)
The effect of Family Court Act § 1046 (a) (ii) is to permit the court to draw an inference of neglect or abuse under the conditions prescribed. Although the establishment of a prima facie case does not shift the burden of proof, it does permit an inference, and in some cases, so strong an inference that "no reasonable man could fail to accept it”. (Prosser, Torts § 40, at 229-230 [4th ed 1971].) Strong inferences of neglect and abuse have been drawn in many Family Court proceedings. (Matter of Charmine W., 61 AD2d 769 [1st Dept 1978]; Matter of Matthew L., 60 AD2d 898 [2d Dept 1978]; Matter of Tashyne L., 53 AD2d 629 [2d Dept 1976].)
The respondent provided no satisfactory explanation of Tara’s condition. He claimed that she was not always in his care and could have contracted the disease when in the care of the baby-sitter. However, the application of the prima facie rule is not limited to those rare cases where a child is never out of the parent’s immediate control. It is always possible that someone other than the parent inflicted the injury. If the child is primarily in the custody of the parent, during the critical period when the injury was sustained, the rule should apply, unless the parent proves that the injury occurred at a time when the child was not in his custody. For example, where both parents have custody, a prima facie case against each can be established unless one can prove he was not the custodian at the critical time. (See, Prosser, op. cit. § 39, at 221-224.)
Respondent claimed that since he did not have gonorrhea at the time Tara’s condition was diagnosed, he could not have transmitted it to her. However, the testimony of the Public Health employee, introduced by petitioner, established that a male may be successfully cured of the disease within 24 hours of treatment. Tara was taken to the hospital by the respondent on July 18. At that time, he was aware that the child *514 had a vaginal discharge. He had had ample opportunity to have received treatment prior to that date and to have been cured of the disease by July 21, 1984, the date of his medical examination. Respondent failed to offer any reasonable explanation as to how Tara became infected, as required in order to overcome the application of Family Court Act § 1046 (a) (ii).
2. Prior out-of-court statements of the child. The child’s prior out-of-court statements alleging sexual abuse were admitted into evidence through the testimony of two Child Protective Services caseworkers who had interviewed the child. Family Court Act § 1046 (a) (vi) authorizes the introduction into evidence of such "previous [out-of-court] statements * * * relating to any allegations of abuse or neglect”, and creates an exception to the hearsay rule. Such out-of-court statements may not, however, absent further evidence, be the sole basis for a finding of abuse or neglect. They must be corroborated. (Family Ct Act § 1046 [a] [vi].)
3. Corroboration and the expert validation. Corroboration is defined by Ballentine’s Law Dictionary* as "evidence of such substantial facts and circumstances as will produce in a sound and prudently cautious mind a confident conclusion that the testimony of the complainant is true in all essentials”, "[additional evidence of a different character to confirm the same point * * * [s]uch * * * as tends to confirm and strengthen the testimony of the witness * * * such as tends to show its truth, or the probability of its truth”. Family Court Act § 1012 (e) (iii) provides that the corroboration requirements of the Penal Law do not apply to proof of allegations of sex offenses under article 10.
Corroboration of the child’s out-of-court statements may take the form of apparently inflicted injuries (the res ipsa cases previously discussed), admissions of a parent, even though retracted (Matter of Margaret W., 83 AD2d 557 [2d Dept 1981]) and the sworn testimony of others (adults and children) (Matter of Hawkins, 76 Misc 2d 738 [Fam Ct, NY County 1974]).
Where the expert validator confirms the child’s out-of-court statements, the validation interview merits consideration as corroborative evidence. The weight to be given the interview as corroboration would depend upon the strength of the validation. Such a validation interview constitutes "additional evidence of a different character to confirm the same point” *515 and "tends to confirm and strengthen the testimony of the witness” coming within the accepted definition of corroboration.
Because of the nature of child sex abuse proceedings, and particularly those involving intrafamilial child sex abuse, it is obvious that the typical form of corroboration (i.e., eyewitness) will rarely be available. Other than those cases falling under the res ipsa doctrine (often tending to be cases involving very young children) many petitions supported by out-of-court statements of the child, no matter how convincing, would not be sustainable, because of the absence of eyewitnesses. However, even in criminal proceedings, expert testimony of the existence of "battered child syndrome” has been admitted to prove parental culpability. (People v Henson, 33 NY2d 63 [1973].) There the court stated (p 73), " 'the diagnosis of the "battered child syndrome” [after years of extensive research] has become an accepted medical diagnosis.’ ”
Medical testimony has been admitted in article 10 proceedings regarding abuse and neglect. (Matter of Vulon, 56 Misc 2d 19 [Fam Ct, Bronx County 1968], supra; Matter of Corey T., 81 AD2d 785 [1st Dept 1981].) In Oregon, the Supreme Court permitted a validation expert to testify in a criminal proceeding concerning intrafamilial child sex abuse syndrome. (State v Middleton, 294 Ore 427, 657 P2d 1215 [1983].)
This court is not unmindful of the fact that difficulties of proof in article 10 proceedings affect the respondent as well as the child alleging injury. Just as witnesses are not customarily available in support of the petition, neither are they normally available in defense of the respondent. However, the respondent does not suffer the impediments of tender years, the fear or inability of a child to testify in open court, which underlies the rationale for admitting out-of-court statements, and the need for corroborating evidence. By accepting the testimony of the validating expert as corroboration, the respondent should not be prejudiced. The expert herein is independent of the petitioner and respondent, appointed solely to represent the child, and to assist the court in its difficult and sensitive quest for the truth. Furthermore, the expert is subject to cross-examination, and the expert’s qualifications are subject to objection.
In enacting article 10, the Legislature recognized the need to balance the public interest in protecting fundamental rights of a respondent (as evidenced by the corroboration require *516 ment of § 1046), against the public interest in protecting children against abuse and neglect. It is noteworthy that a recent change in Penal Law § 130.16 eliminated the requirement of corroboration in those cases of sex abuse where incapacity to consent resulted solely from the facts of the child’s age. This change reflects the growing recognition and concern of the Legislature (and the public) for the plight of abused and neglected children and the legal impediments to their protection.
4. In camera interview of child. It is not the practice of this court to require in camera interviews in all article 10 proceedings. In the case of Tara H., the interview proved helpful to the court, in providing the opportunity for the court to directly assess the child’s credibility, to observe her behavior, and to reaffirm her out-of-court statements.
In camera interviews of children have long been accepted by the New York Court of Appeals in custody cases (Matter of Lincoln v Lincoln, 24 NY2d 270 [1969]). The highest court of this State has yet to speak on the propriety of such interviews in article 10 proceedings. Such interviews have, however, been approved by the Appellate Division, Second Department, at least in emergency removal proceedings. (Matter of Bernelle R, 59 AD2d 764 [2d Dept 1977].)
Tara was not an appropriate candidate to testify in open court due to her age and the traumatic effect of the experience.
In camera interviews in article 10 proceedings do not properly serve as corroboration of the interviewed child’s out-of-court statements (since the interview is not "additional” evidence or evidence of a "different type” within the second definition of corroboration). The in camera interview can be considered as affecting the weight accorded to the child’s prior out-of-court statements (and might also serve to corroborate the out-of-court statements of a child other than the child interviewed).
Tara’s in camera interview was transcribed and the record sealed, to be made available only in case of appellate review, in accordance with preferred New York practice. (Matter of Fleishman v Walters, 40 AD2d 622 [4th Dept 1972]; Matter of Sooy, 101 AD2d 287, 288 [3d Dept 1984].)
Schedule dispositional hearing immediately.

 Ballentine’s Law Dictionary 276 (3d ed).