OPINION OF THE COURT
James F. X. Doyle, J.
The court has before it an abuse petition filed by Child *774 Protective Services (CPS) on behalf of Melissa M., born November 18, 1977, which alleges in essence that the child was sexually abused by respondent Frank M. with the alleged acquiescence, after the fact, of respondent Debra, the mother of the child. The court has conducted a hearing on the petition which is here determined.
Based on the credible evidence the court finds that the mother respondent, Debra M., did not act in any culpable manner concerning the events on which the abuse is founded or that she otherwise abused or neglected the child and the court for the reasons indicated dismisses the petition as to her. The credible evidence does, however, reflect that the child was sexually abused by the boyfriend of the mother, respondent Frank M., who resided in the house, and the court so finds.
The evidence presented reflects that the child initially made statements to school officials indicating a fear of respondent Frank M. based on allegations of touching her upper body and culminating in a statement that there was forced exposure to sexually explicit adult magazines coupled with repeated incidents of the child performing oral acts with respondent and being subjected to sexual intercourse on many occasions.
In support of the petition CPS has presented the various prior out-of-court statements of the child, elicited through the testimony of school officials, a CPS field worker and an expert witness, a senior psychiatric social worker, who evaluated the child and unequivocally validated in sworn testimony before the court the out-of-court statements of the child concerning the sexual abuse. In addition the child testified in camera, on the record, in the presence of counsel concerning the events on which the petition is based.
Respondents both emphatically deny the allegations, contending that there is no basis in fact for the allegations of sexual abuse. In their defense they point to a number of inconsistencies in the out-of-court statements of the child and to contradictions in her statements as well as the flat denial of respondent Frank M. that he ever participated in any sexual activities whatever with the child. In this regard his denial is wholly supported by respondent Debra M. who also contradicts some of the direct testimony of the child. In addition to the mother, the brother, 11 years of age, and the grandfather of the child also testified and both essentially agreed that there was no corroboration of the events alleged by the child *775 and that they were aware of no evidence of abuse as far as they could determine from their frequent contact with the child.
Under the circumstances the court has carefully scrutinized the evidence to determine whether the allegations of abuse are properly founded on actual sexual contact based on facts properly established, by a fair preponderance of the credible evidence, as required by the statute in proceedings under article 10 of the Family Court Act.
Family Court Act § 1046 (a) (vi) provides in pertinent part that in a hearing under article 10, "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect. Any other evidence tending to support the reliability of the previous statements, including, but not limited to the types of evidence defined in this subdivision shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse or neglect” (emphasis added).
This language of Family Court Act § 1046 (a) (vi) has perplexed fact finders in article 10 proceedings since its addition on August 1, 1985, almost as much as did the language of the subdivision as originally enacted. Controversy existed among nisi prius courts as to whether or not the criminal standard of corroboration was to be applied (Matter of Fawn S., 128 Misc 2d 186; Matter of Tara H., 129 Misc 2d 508); whether or not validation testimony by itself constituted sufficient corroboration (Matter of Tara H., supra; Matter of Michael G., 129 Misc 2d 186); and whether or not unsworn in camera interviews of the subject child alone suffice as corroboration (Matter of Tara H., supra; Matter of Fawn S., supra). The Appellate Division, Second Department, in Matter of Dana F. (113 AD2d 939 [1985]) strongly suggested, but did not definitively hold, that (1) the criminal corroboration standard was inapplicable in abuse matters, (2) testimony of a psychiatrist or caseworker could alone provide the corroboration required, and (3) in camera testimony of the child might also corroborate his or her pretrial statement.
However, the holding in Matter of Fawn S. (123 AD2d 871 [2d Dept, Oct. 1986]) has disposed of much of the confusion that previously existed with reference to the corroboration requirement in neglect and abuse cases as enunciated in *776 Family Court Act § 1046. There the court explicitly held that in a Family Court proceeding under article 10 the criminal standard of corroboration is inapplicable and that validation testimony alone may provide the "requisite corroboration”. While Fawn S. provided that in camera interviews under "certain circumstances” could provide the corroboration necessary for a child’s out-of-court statement, it does not clearly answer the question of whether such interviews alone were sufficient corroboration.
Under the circumstances here, where the court is presented with credible and reliable in camera testimony of the child in addition to expert validation testimony that the child has been sexually abused, the court is not required to determine the issue solely on the efficacy of an abuse finding based upon the pretrial out-of-court statement of the child alone.
Application of the Fawn S. holding to the credible evidence presented here supports a finding that, by a preponderance of the credible evidence presented the child was sexually abused within the meaning of Family Court Act § 1012 (e) by a person who was then in a position of responsibility for her care and the court so finds.
The critical issue presented here is whether the court may find abuse based essentially on the statement of a child eight years old where there is scant real evidence which is objective, demonstrable evidence corroborating the actual occurrence of the sexual acts which constitute the basis of the abuse charged. The quintessential question becomes one whether, where faced with a stonewall denial from the other members of the infant’s household who deny that the abuse could have occurred and with no other tangible evidence to the contrary, may the court nonetheless properly find that sexual abuse has occurred. The court believes it can do so and so finds.
The respondents, represented by the same counsel, presented evidence that purported to preclude the access of Frank M. to the child at any critical time. The child had stated in out-of-court statements and testified in camera that the abuse occurred on numerous occasions after school and at times when her mother and brother went shopping or were out of the house doing the laundry. The other members of the household denied that the child was ever left alone with respondent Frank M.
During the relevant periods the respondent was a bartender by trade during the evening and worked until 4:00 a.m. five *777 days a week. He was off on Monday and Tuesday. He was in the home during his nonworking hours. He claimed that the entire family including the child, her brother, an infant sister and the mother would all go to the laundry or shopping together or that the brother would stay home with the infant and both respondent and Melissa would go. The brother, Jason, 11 years old, testified that neither he nor Frank M. went to the laundry and that if the mother went out shopping for a few minutes he would remain in the household with Melissa always going with the mother. The mother testified that Frank M. never went to the laundry but that he and Melissa nonetheless were never left alone over a two-year period. In viewing this contradictory evidence the court notes that this period was well before there were any complaints concerning the relationship between the child and Frank M. and where there was no other reason proffered for either limiting contact between respondent and the child or for family members noting who was present or absent for each particular trip outside the household. The court finds this evidence to be inconsistent and not credible and disregards it.
Respondents point to a number of other factors which they contend also reflect on the credibility of the child and undermine the motive of Melissa in making the allegations including a recent incident with Frank M. where the child became angry when he pinched her shoulder; that she is jealous of a child recently born; that in any event she tends to make up stories and that she voluntarily viewed three sexually explicit magazines admittedly kept in the back of a bathroom cabinet by respondents and this is the source of her knowledge of sexual matters. Three such magazine were identified by respondents and offered into evidence for consideration by the court.
While the court does not exclude that such factors could constitute a compelling defense under some circumstances, the court finds these contentions along with others raised by respondents are against the weight of the other evidence presented to the court.
Here there is ample evidence of sexual abuse based on the explicit knowledge of the child of the sexual matters she discussed in detail. Her knowledge includes the relative size of the male organ, the manner in which manipulation results in ejaculation, the movements involved and the results of such actions. The child is articulate and precocious and her in-court *778 statement in this regard is compelling but the court does not rely on this alone.
In addition, here the out-of-court statements of the child are strongly supported by an expert who validates, in every essential aspect, that the child was sexually abused by the mother’s boyfriend, respondent Frank M. The expert, Marie Baltz, a certified social worker, and senior psychiatric caseworker with a background in adolescent therapeutic counseling, conducted over 20 counseling/therapy sessions with the child. Her testimony appropriately presented in court encompasses an opinion that the child was sexually abused, that the abuse was done by respondent Frank M. and that there is virtually no likelihood that the child is fabricating any significant facts and the court so finds.
The validator was convinced that the child’s knowledge of such matters could not have come from any sexually explicit magazines and the court agrees. Based on the in-court interview with the child there is no question that the details provided could not have come from magazines even ones as sexually explicit as the three in evidence or from any cable television adult film.
Respondents challenge the truth and veracity of this eight-year-old child contending that her imagination has been fanciful and that she has had a reputation for telling stories. The court notes the testimony presented from those outside the immediate family did not agree with their conclusion that the child had a tendency to lie. Further, this was also disputed by the testimony of the expert presented. The court, based on its interview with the child and viewing the evidence, in toto, concludes that her statements and testimony were and are credible and consistent with the allegations of sexual abuse and the court so finds.
Respondents in denying the sexual abuse also point to inconsistencies in the child’s various statements to a neighbor, school officials, a CPS worker and the expert validator. While the fact that there were such inconsistencies was artfully detailed by counsel in cross-examination the court finds that the inconsistencies established do not undermine the credibility of the child or otherwise taint the process which resulted in this proceeding being brought to court.
Initially, the child told a neighbor that she was "sexed” by her mother’s boyfriend. That he put his hand up her pajamas. The child was told to tell her mother about it and the matter *779 was not pursued by either the child or the neighbor. Some time later the child was questioned by the school nurse. An initial statement by the child to the nurse included her having her pajamas taken off by Frank M. and her chest touched and included general allegations of a sexual nature. In addition, the child indicated she was afraid of respondent, didn’t want to go home or be left alone with him. When CPS became involved Melissa told them of the sexual abuse generally and also told them that her brother, Jason, was afraid of respondent because Frank M. had hit and kicked them both. The statements of the child become more graphically detailed with the expert validator and included specific sexual matters which ultimately overshadowed the original general allegations.
Respondents argue that the failure of the child to include the most serious allegations at the outset in her original statements where the focus was on touching and less explicit acts. They point to the fact that neither the CPS worker nor the expert validator sought to properly verify the inconsistencies by carefully checking what was told to them with earlier statements or to confront the child with the changes of her statements as they evolved.
While the court agrees that there were inconsistencies in the statements of the child that were not timely investigated or adequately verified when they arose, in the context of the evidence presented, they were minor discrepancies which do not discredit the child or taint the proceeding. It is clear to the court that the source of the explicit details presented by the child is from the child alone and not those who questioned her.
The allegations against the mother of the child are grounded essentially on her failure to cooperate with CPS after the fact and not on any complicity in the acts of abuse.
The credible evidence adduced at trial supports the allegations to the extent that the mother did impress on the child the seriousness of the allegations and did instruct her not to openly discuss these sexual matters with others. The child was led to believe that if these things were true they could result in criminal prosecution and possibly a long term in prison for respondent Frank M. In fact, the child for a time did refuse to discuss any details further with school officials or the CPS field worker.
The credible evidence, however, also supports the explanation of the mother concerning these allegations.
*780 The mother did not believe that these acts could have occurred and up to the time of the trial she continued to deny this fact. She felt that even unsupported allegations could have grave consequences and she acted to try to sort out the conflict between the allegations and her personal belief. More importantly when CPS contacted her for an interview in the home with the child she did cooperate. The child was made available for an interview and there was a voluntary agreement to a change in custody of the child to her former husband, the father of the child.
Viewed within the context of the circumstances as they existed at the time, the court concludes that the mother acted in good faith in the belief, albeit mistaken, that the allegations were unfounded and untrue.
There were allusions at trial to other matters which arose in the interaction of mother and child that may have been a basis for intervention by the mother but the evidence does not adequately support them as a basis for a finding of abuse or neglect and the court concludes that there is insufficient evidence to find that the mother abused or neglected the child. Accordingly, the petition is dismissed as to her.
This is the decision and order of the court concerning the fact-finding hearing. A dispositional hearing will be conducted by the court on the 26th day of June 1987.