Kaye, J.
(concurring in part and dissenting in part). In 1988, the Westchester County Department of Social Services (DSS) filed an abuse and neglect petition, alleging that, in July 1988, respondent had sexually abused his four-year-old daughter, Jessica R. This action was taken after the victim had been evaluated by a Child Sexual Abuse Syndrome specialist, known as a validator, retained by DSS. Respondent then requested an order directing that the child be produced for examination by a validator of his choice.
The majority concludes that the matter should be remitted so that Family Court may decide, in its discretion, whether Jessica R. — now eight years old — should be subject to this second validation examination. Because of respondent’s failure to show any need for another examination, I disagree with the majority’s disposition and would deny his motion.
It is by now well established that abused children evidence distinct reactions and that expert observation of this behavior may constitute substantive evidence of abuse (see generally, Myers et al., Expert Testimony in Child Sexual Abuse Litigation, 68 Neb L Rev 1 [1989]; Comment, The Admissibility of Expert Psychological Testimony in Cases Involving the Sexual Misuse of a Child, 42 Miami L Rev 1033 [1988]; Comment, The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases, 34 UCLA L Rev 175 [1986]). The validation procedure is the process by which an expert seeks to determine if the child suffers from "intrafamilial child sex abuse syndrome” (see, Matter of Michael G., 129 Misc 2d 186, 192).
It is generally recognized that the validation process may be traumatic for a child. The "validation process requires that the child establish a relationship with the expert. It necessitates the child’s recounting and reliving the traumatic incidents suffered. She must overcome fear, guilt and embarrassment. Multiple validations would subject a truthful child to *1035 another form of child abuse * * * [and] a child fabricating such abuse must be severely emotionally disturbed and could be seriously traumatized by continuous probing.” (Matter of Tara H., 129 Misc 2d 508, 509.)
As the majority acknowledges, "examinations by an adversary’s expert will almost always present potential harm to the child” (majority opn, at 1033). Indeed, in this case there was evidence that the initial psychiatric evaluation was significantly traumatic to the child (see, 163 AD2d 543, 549).
Against potential for harm to the child must be weighed respondent’s need for the examination to assist in preparation of his case (Family Ct Act § 1038 [c]).
As the majority notes, section 1038 (c) was not in effect when Family Court decided the present case. Instead, the court relied on Family Court Act § 251, which provided jurisdiction to order an examination by a court-designated psychiatrist when such an examination would "serve the purposes of this act.” As Justice Miller noted at the Appellate Division, section 1038 (c) must also be read consistently with the overriding concern of the Family Court Act, namely the protection of children (163 AD2d, at 551; see also, Family Ct Act § 1011; Matter of Nicole V., 123 AD2d 97, 104 [purpose of article 10 of Family Ct Act can only be achieved by tipping the balance between the rights of children and their parents in favor of protecting the children], affd 71 NY2d 112). It is respondent’s burden in seeking a second examination, as it was under section 251, to establish that the need for the procedure outweighs the potential harm to the child (see, Matter of Tara H., supra [decided prior to enactment of Family Ct Act § 1038 (c)]).
Respondent made no showing whatsoever of need. He in no way challenged the impartiality of the DSS expert, or the examination that had already been performed. Additionally, Family Court ordered the entire DSS file turned over to him.
Further relief should not have been ordered on the basis of respondent’s bald assertions, made in his attorney’s affidavits, that he "is entitled to * * * a mental examination of the infant,” that the charges were "difficult to defend,” and that in fact a second examination would be "in said child’s best interests.” Respondent should not be given a second chance to meet the burden of proof he already failed to satisfy.
Chief Judge Wachtler and Judges Simons, Alexander, Titone and Hancock, Jr., concur; Judge Kaye dissents in part in an opinion in which Judge Bellacosa concurs.
*1036 Order reversed, without costs, and matter remitted to Family Court, Westchester County, for further proceedings in accordance with the memorandum herein. Certified question answered in the negative.