OPINION OF THE COURT
Sondra Miller, J.
The Department of Social Services filed a petition, alleging a father’s sexual abuse of his three- and one-half year-old son. This proceeding raises the issue of the nature and quantum of evidence required to corroborate the child’s out-of-court statements, pursuant to Family Court Act § 1046 (a) (vi) which provides: "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact-finding of abuse or neglect” (emphasis supplied).
No definition of corroboration in the context of Family *187 Court Act article 10 is provided by statute. New York courts have addressed the issue on a case-by-case basis.
After a lengthy hearing, this court finds that the child’s out-of-court statements have been corroborated in sufficient quantum to sustain the petition.
The issues of fact are: (1) Has the child been sexually abused? (2) Is respondent father the perpetrator?
The issues of law are: (1) What constitutes corroboration under article 10? (2) Has a sufficient quantum of corroboration been presented to sustain the petition?
Mikey’s grandmother, a nurse, testified to his bizarre sexual conduct. He showed a sudden fear of men and sexually aggressive behavior toward other children. He awoke from nightmares crying for his father to stop hurting him. She further testified that when she examined his anus, it looked like "a piece of raw meat”.
The child’s pediatrician testified that he twice found evidence of irritation on Michael’s penis and rectum. He testified that this condition might have been caused by attempted penetration or by other factors including constipation.
A caseworker testified that in an interview using anatomically correct dolls, Mikey placed the dolls face to face, rolled the baby doll’s penis and hit the daddy doll’s penis. He became very excited, spread the baby doll’s legs and told the interviewer that "Daddy’s penis got big” and that they "played games”.
A therapist (MSW) selected by the Law Guardian as an expert in intrafamilial child sex abuse was found qualified without objection. She had served as a consultant for the Federal Bureau of Investigation, validating over 86 cases of child sex abuse. She had also interviewed over 5,000 victims of sex abuse since 1975, consulting for various New York City agencies. Pretending he was his father and a baby doll was himself, Mikey kissed the doll, removed its clothing, put it on his lap, and whispered to it. He put the baby and daddy dolls in bed and said "Daddy hurts him”, indicating the doll’s bottom as where it hurt. The child said he had scary dreams, refusing to elaborate. Based upon her observations of Mikey’s behavior, doll play, agitated affect and statements identifying his father, the therapist found that Mikey exhibited "intrafamilial child sex abuse syndrome”, concluding that he had been sexually abused and that the father was the perpetrator. She *188 saw the child on several other occasions and did not change her opinion.
Mikey’s mother (testifying for the respondent) confirmed the child’s sudden fear of men and his nightmares. On one occasion, he woke up crying, "I don’t want to. You’re hurting me”. She stated that respondent had told her that he had been raped at 14. Since leaving the marital residence Mikey no longer suffered from nightmares nor defecated in his clothing.
The respondent confirmed the child’s fear of men and nightmares, saying that Mikey would awaken thrashing his arms about and seeming to fight someone off. Respondent did not deny that he had been raped as a child.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
The court finds respondent committed sexual abuse in the first degree pursuant to Penal Law § 130.65; or in the alternative, that he neglected his child by failing to exercise a minimum degree of care, causing the child physical and emotional impairment. These findings are based on a standard of clear and convincing evidence (notwithstanding the statutory requirement of a mere preponderance) (Family Ct Act § 1046 [b]).
This conclusion is based upon the application of a definition of corroboration, which includes as corroboration: all evidence other than the child’s out-of-court statements tending to prove the child was sexually abused and respondent was the perpetrator.
DEFINITION JUSTIFIED
The Legislature provided for admission of out-of-court statements, normally excluded as hearsay in child protective proceedings, because of the difficulty in proving child abuse and neglect. The victims are often too young or frightened to testify. The experience of testifying against a family member is traumatic. There are rarely witnesses to child abuse. Perpetrators are unlikely to confess.
The Legislature required corroboration of such statements because of their inherent weakness, as hearsay. Since a child’s testimony standing alone is sufficient to sustain a finding of sexual abuse even in Criminal Court (Penal Law § 130.16, amended eff Nov. 1, 1984 to eliminate corroboration requirement), the corroboration requirement of Family Court Act *189 § 1046 (a) (vi) is clearly not based upon a distrust of the child’s statement because it was made by the child, but simply because it is hearsay.
The Legislature required no particular kind of corroboration merely that corroboration be provided. Logically, all evidence tending to prove that the act alleged by the child in his out-of-court statements was actually committed, corroborates that statement, as it enhances the reliability of the statement itself.
Although novel to New York, this concept of corroboration has been adopted by the District of Columbia in sex crimes prosecutions involving children. "As a basic principle, it seems clear that corroboration in a case involving an alleged sex oifense is any evidence, outside of the complainant’s testimony, which has probative value — any evidence which could convince the trier of fact that the crime was committed.” (United States v Terry, 422 F2d 704, 707 [1970]; emphasis added.)
New York courts, grappling with the issue of corroboration on a case-by-case basis, have accepted as corroboration admissions of a parent (even if retracted) (Matter of Margaret W., 83 AD2d 557 [2d Dept 1981]), the sworn testimony of others (adults and children) (Matter of Hawkins, 76 Misc 2d 738 [Fam Ct, NY County 1974]), medicals (People v De Berry, 76 AD2d 933 [2d Dept 1980]), the presence of a sexually transmitted disease (Matter of Tara H, NYLJ, Oct. 19, 1984, p 15, col 4 [Fam Ct, Westchester County]) and validation of the child’s complaints by a qualified expert. (Matter of Tara H, supra.)
Criminal law provides some guidance in defining corroboration, even though the highest standard of proof, "beyond a reasonable doubt” applies to those proceedings. Corroborative evidence "need not prove defendant’s guilt to a moral certainty, but need simply harmonize with the victim’s testimony in such a manner as to furnish the necessary connection between the defendant and the crime”. (People v De Vyver, 89 AD2d 745, 747 [3d Dept 1982].) "Corroborating evidence may be circumstantial * * * It need not be positive and direct” (People v Dow, 34 AD2d 224, 229 [1970]).
The absence of a definition of corroboration, consistent with the purposes of article 10, is potentially disastrous, as illustrated by the court’s dismissal of an abuse petition in Matter of Nicole S. (123 Misc 2d 364, 367-368 [Fam Ct, Monroe County 1984]), where the court held the same standard appli *190 cable to corroboration of a child’s unsworn testimony in a criminal case should be applied to out-of-court statements admitted in article 10 proceedings. Statements of a four-year-old girl that her father kicked her in the stomach, and photographs illustrating the injuries of the child, who had been hospitalized, were admitted in evidence. However, she did not testify and the petition was dismissed, the court noting the child was "fortunately” in foster care.
In Matter of Hawkins (76 Misc 2d 738, 739-740 [Fam Ct, NY County 1974]), a petition alleging sexual abuse by the father of an 11-year-old girl survived dismissal only because her 13-year-old brother courageously testified against his father, describing his father gyrating against his sister with her pants down. Without this sworn testimony, the court indicated the petition would have failed for lack of corroboration.
Article 10, often referred to as a "Children’s Bill of Rights”, provides special evidentiary rules designed to protect abused and neglected children. The statute reflects the legislative awareness of a potential conflict between children’s safety and parents’ rights, which it resolved in favor of protecting helpless children while limiting the constitutional due process safeguards normally provided to respondents in civil and criminal proceedings.
Due process rights of respondents preserved in other civil and criminal proceedings have been subordinated by the courts to effectuate the paramount purposes of the statute— that of protecting children. (Matter of Michael B., 60 AD2d 628 [2d Dept 1977]; Matter of Germaine B., 86 AD2d 847 [1st Dept 1982]; Matter of Patricia P., 117 Misc 2d 826 [Fam Ct, Bronx County 1983]; Matter of Linda O., 95 Misc 2d 744 [Fam Ct, Queens County 1978]; Matter of Diana A., 65 Misc 2d 1034 [Fam Ct, NY County 1971]; Matter of Tonita R., 74 AD2d 830 [2d Dept 1980]; Matter of Tashyne L., 53 AD2d 629 [2d Dept 1976].)
In reconciling the special rules of Family Court with traditional civil and criminal court due process standards, the New York Court of Appeals stated:
" '[D]ue process varies with the subject-matter and the necessities of the situation’
"The sociolegal nature of the problems with which Family Court Judges deal requires the exercise of considerable discretion * * * Tender years, mental health, behavior in the courtroom, the need to shield some children from the emotional *191 trauma certain disclosures would be likely to produce, these are not the kind of considerations which Family Court Judges must or should ignore”. (Matter of Cecilia R., 36 NY2d 317, 322 [1975].)
The obvious differences between Criminal and Family Court proceedings justifies this lesser standard of due process. As stated in Matter of Maureen G. (103 Misc 2d 109, 113 [Fam Ct, Richmond County 1980]), "[Article 10 proceedings] are not designed to punish offenders for [their] acts against their victims, but to protect their victims from further harm.”
CORROBORATIVE FACTORS IN THIS PROCEEDING
The following evidence corroborated Mikey’s out-of-court statements:
1. The observed behavior of the child corroborated his statements that he had been sexually abused.
Mikey’s change in behavior, observed by his mother, his grandmother and his father (the respondent) indicated he had been sexually abused. Experts for both parties testified that his fear of men, and bizarre sexual behavior, were symptomatic of sexual abuse.
Even absent expert testimony, this type of behavior is recognized by this court as clearly beyond the norm for a three- and one-half year-old child, demonstrating that the child suffers from serious distress. The fact that this behavior was involuntary, spontaneous and unrehearsed entitles it to substantial weight as a corroborative factor.
2. The change in the child’s behavior since his removal from the respondent corroborated the child’s out-of-court statements.
Mikey’s mother and grandmother testified that his symptoms subsided when he was removed from the presence of the father.
3. Medical evidence presented by the child’s pediatrician also corroborated the child’s out-of-court statements.
The pediatrician testified that examination of Mikey revealed a swollen, irritated penis and trauma to the anus, and that this condition could have been caused by sexual abuse. While far from conclusive in and of itself, this child’s physical condition is a corroborative factor.
4. The credibility of the witnesses other than the victim is a corroborative factor, tending to prove the truth of the child’s statements.
*192 The child’s statements were made to three different persons on different occasions, i.e., the grandmother, the caseworker and the therapist. The testimony of these witnesses was consistent and reliable. The therapist, chosen by the Law Guardian to validate the child’s complaints was independent of both parties. The caseworker, although employed by petitioner, Department of Social Services, is a professional and unlikely to perjure or distort the facts. While the grandmother may well be prejudiced in favor of her daughter against the respondent, her overriding concern for the child was compelling. Her testimony on direct and cross-examination impressed the court as highly credible.
On the other hand, the respondent’s testimony lacked credibility. He testified that he was so rarely alone with his three- and one-half year-old son that he lacked opportunity to abuse him. He stated that he did not become angry when he found his wife necking and petting with a male friend in a car outside their home. He failed to present his therapist as a witness. Testimony from such a witness to his denial of the allegations might have been persuasive. He failed to controvert his wife’s testimony that he told her he had been raped as a child. His failure to do so effected an admission that he was sexually abused as a child. Expert testimony was presented that abused children often become child abusers. The respondent thus admitted to a past experience which predisposed him, psychologically, to having committed the abuse alleged.
VALIDATION OF THE CHILD’S OUT-OF-COURT STATEMENTS BY A QUALIFIED EXPERT ACCORDING TO SPECIFIC GUIDELINES IS CORROBORATION
Validation is the process by which an expert confirms or fails to confirm the existence of "intrafamilial child sex abuse syndrome”. (See, Sgroi, Handbook of Clinical Intervention in Child Sexual Abuse [Livingston Books 1982].)
The validator determines the existence of posttraumatic stress, from a cluster of behaviors.
Other than Matter of Tara H. (NYLJ, Oct. 19, 1984, p 15, col 4, supra), there are no reported New York cases holding that validation is corroboration, nor are there any appellate decisions on the issue.
However, the highest courts of Minnesota and Hawaii have admitted expert testimony to assist the jury in assessing the *193 credibility of witnesses in criminal child sex abuse cases. In State v Myers (359 NW2d 604 [Minn 1984]), a clinical psychologist testified to characteristics typically involved in sexually abused children, and to the credibility of the witness. The court reasoned that although with respect to most crimes, the credibility of witnesses is particularly within the competence of the jury, common experience affords insufficient basis for the jury’s assessment of credibility in children. Since incest is prohibited in all or almost all cultures, the common experience of the jury may represent a less than adequate foundation for assessing credibility of a young child who complains of sexual abuse.
In State v Carlson (360 NW2d 442 [Minn]) in January 1985, the Court of Appeals of Minnesota upheld the use of expert testimony relating to the behavior of sexually abused children on the dual grounds that such issues are beyond the common knowledge of the trier of fact and that such testimony is properly admitted in aiding the trier of fact in determining credibility.
In State v Kim (64 Hawaii 598, 645 P2d 1330 [1982]) the Supreme Court of Hawaii permitted the testimony of a child psychiatrist to support the credibility of the complaining child witness. The court remarked that such testimony is admitted to provide a scientific perspective from which the trier of fact may evaluate the complainant’s testimony. Although in most situations credibility should be assessed by the trier of fact, where the nature of a particular witness’s mental or physical condition is such that the common experience of the trier of fact may not have provided adequate foundation for assessing such credibility, the value of expert testimony is likely to outweigh its potential prejudicial affect. This is true, where the witness is a child complainant whose claims are substantially uncorroborated.
In State v Middleton (294 Ore 427, 657 P2d 1215 [1983]), the Oregon Supreme Court allowed expert testimony describing the reaction of a typical child victim of intrafamilial sex abuse.
In a New York criminal prosecution for sodomy of a minor, an expert in the area of sexual abuse was permitted to testify as to why a victim often delays revealing the crime, particularly when it occurred in a family setting. The court found that this testimony was proper in that it involved a subject of uncommon knowledge, "beyond the ken of the ordinary ju *194 ror”. (People v Benjamin R., 103 AD2d 663, 669 [4th Dept 1984].)
The acceptance of expert testimony in article 10 proceedings to validate a child’s out-of-court statements is analogous to the acceptance by various courts of testimony by experts on similar psychological phenomena, not easily understood by the finder of fact (e.g., "battered child syndrome”, People v Henson, 33 NY2d 63; "rape trauma syndrome”, People v Reid, 123 Misc 2d 1084; "phenomenon of repression”, People v Fisher, 73 AD2d 886, affd 53 NY2d 907, 909).
SUFFICIENCY OF CORROBORATION
There is no objective test determining if a sufficient quantum of corroborative evidence has been presented. Such determinations must be made by the court on a case-by-case basis.
The Court of Appeals of the District of Columbia, addressed the issue, holding: "There is no objective test for determining whether the victim’s testimony is sufficiently corroborated; we must make that determination on a case by case basis * * * To determine the quantum of evidence required to corroborate a particular victim’s testimony, we look to factors exogenous to the case; that is, we look to such things as the victim’s age, his motives to falsify and any other indication that the victim’s allegations are something other than baseless.” (Hall v United States, 400 A2d 1063, 1065 [DC App 1979].)
In the instant case the totality of the corroborative evidence presented more than satisfies any reasonable standard of sufficiency.
PETITION SUSTAINED AS TO NEGLECT
If the petition were not sustained as to abuse, the evidence presented is sufficient to sustain a finding of neglect, pursuant to Family Court Act § 1012 (f), in that the child’s physical and emotional condition became impaired due to respondent’s failure to exercise a minimum degree of care, or to provide adequate medical care to address the child’s needs.
The respondent testified to having observed the child’s fear of men, and severe nightmares. He did nothing to determine the cause of the child’s disturbed behavior. His contention that he did not seek treatment for the child because he relied on his wife to arrange for it is an inadequate explanation, especially since he had testified that she was emotionally disturbed (even psychotic), and totally unreliable.
*195 Mikey is found to have been the victim of sexual abuse by his father. The potential traumatic effect upon him is described in a well-known text on the subject of child abuse. "[B]oys [who are victims of intrafamilial child sexual abuse] fare far worse than girls. Either mother-son * * * or father-son incest seems to leave boys with such severe emotional insult as to block normal emotional growth. They tend to be severely restricted and may be unable to handle any stress * * * without becoming frankly psychotic. Incest * * * is ruinous for boys” (Kempe and Kempe, Child Abuse, The Developing Child, ch 4, Incest and Other Forms of Sexual Abuse, at 56 [Harvard Univ Press 1978]).
Calendar for dispositional hearing.