OPINION OF THE COURT
Guy P. De Phillips, J.
In this child abuse case it is alleged that the respondent father on one or more occasions inserted his finger, his penis and/or another object into the child’s anus; masturbated the *1116 child and encouraged the child to masturbate him and engaged with the child in mutual touching of each other’s private parts while sleeping naked together and/or bathing together. Before rendering its findings and conclusions the court notes that the nature of this proceeding has the most profound implications for the child and for the parents and that the State’s intervention into family life is commensurate with the need to protect the child, to safeguard the child’s best interest and to comply with requisite due process. Indeed a child abuse finding against a parent or parents where no abuse has occurred is as harmful and as devastating to the subject child as is the failure to find child abuse where such has occurred. Mindful of this reality, the Legislature in enacting Family Court Act article 10 has scrupulously attended to the requirement that due process be observed.
The impartiality of the trial court in affording the litigants a fair trial is buttressed by the realization that at the fact-finding stage of the proceeding the court possesses no investigatory or inquisitorial function. (See, Matter of Commissioner of Social Servs. of Erie County, 67 AD2d 815 [4th Dept 1979]; Matter of Billy R., 103 Misc 2d 988 [Fam Ct, Queens County 1980]; cf. Matter of T. Children, 123 AD2d 390 [2d Dept 1986]; Matter of Dara R., 119 AD2d 579 [2d Dept 1986]; Matter of Dana F., 113 AD2d 939 [2d Dept 1985].) Local Departments of Social Services and their authorized agents have the responsibility for child protection and for safeguarding against child abuse and neglect. The court where appropriate may order an investigation of allegations of child abuse or neglect or the filing of a child protective proceeding. Where the local Department of Social Services or its agent is derelict in this responsibility the court may seek vindication of its directives. No statutory imperative exists for the court to relegate to itself the investigative or prosecutorial power of the local Department of Social Services or its agents. To do so through the expedient of invoking child protection as the goal to be attained is inherently dangerous. Apart from jurisprudential implications, there is a danger of violation of separation of powers by governmental entities and the evolution of the court into a semi-inquisitorial/prosecutorial body in the context of article 10 proceedings. There should be no burden placed on the trial court to present or help the Department of Social Services in presenting the allegation of abuse or neglect. The Department has the duty and the responsibility to present its case at trial as it sees fit. Only on those rare *1117 occasions where the Department of Social Services or its agent is derelict in its duty to present the petition may the court intercede to insure that the issues are fully and clearly litigated under circumstances compatible with fairness, due process and the policy underlying Family Court Act article 10. Accordingly this court has endeavored to maintain impartiality and to afford the litigants a fair trial in which the issue of whether the subject child has been the victim of child abuse is fully and clearly litigated.
Prior to resting, respondent orally moved to have the results of a polygraph examination (lie detector) admitted into evidence. Respondent’s offer of proof consisted of representations that the polygraph test was administered to him at his request by an examiner of his choosing without prior court approval and without stipulation between counsel for petitioner, respondent and the child (Law Guardian). It was further represented that the results of the polygraph were favorable to the respondent. The court denied respondent’s application for the following reasons: as a general proposition polygraph results are inadmissible in New York because they do not possess a necessary modicum of scientific consensus on the issue of reliability and efficacy (People v Leone, 25 NY2d 511 [1969]; see, People v Tarsia, 50 NY2d 1 [1980]; People v Shedrick, 66 NY2d 1015 [1985]; People v Stuewe, 103 AD2d 1042 [4th Dept 1984], lv denied 63 NY2d 680 [1984]; cf. May v Shaw, 79 AD2d 970 [2d Dept 1981], wherein polygraph results held admissible in an administrative hearing).
Matter of Meyer (132 Misc 2d 415, 420 [Fam Ct, Kings County 1986]) held that "the unique combination of circumstances presented in child protective proceedings” warrants "the admission of expert polygraph testimony”. In Meyer, the court distinguished People v Leone (supra) and its progeny on the basis that the exclusionary rule as to polygraph evidence is advanced in the context of criminal proceedings whereas a child protective proceeding is civil in nature. Further it was observed that in a child protective proceeding the court is the finder of fact thereby reducing the danger that polygraph evidence will be given undue weight. The court also equated polygraph evidence in terms of reliability with psychiatric and psychological "validation” evidence. Invoking a respondent’s right to due process and "fundamental fairness”, the court concluded that polygraph evidence is admissible.
This court does not adopt the "blanket” admissibility approach indorsed in Matter of Meyer (supra). It is this court’s *1118 considered opinion that "validation” evidence may not be equated with polygraph evidence, per se, in terms of the requisite scientific consensus as to reliability and efficacy. Further, while acknowledging that the danger of undue weight being given polygraph evidence might be less where the fact finder is the court rather than a petit jury, the danger is not thereby obviated. The unique and delicate balancing of society’s demand that children be protected with society’s recognition that the State may interfere with the primacy of parental custodial rights only where warranted implies scrupulous attention to due process and fundamental fairness in child protective proceedings. In this regard the court "echoes” the similar observations made in Matter of Meyer (supra).
Polygraph evidence as heretofore acknowledged by the Court of Appeals and reiterated by numerous judicial tribunals does not possess the requisite degree of reliability to permit admissibility as a general rule. The critical factor is reliability. Child protective proceedings by their very nature mandate that every reasonable precaution as to reliability of evidence advanced in the course thereof be undertaken. The admissibility of "validation” testimony may not of itself warrant the admissibility of polygraph evidence in an abstract endeavor to balance the scales between the need to protect the child and to afford respondent due process.
A lie detector may not be cross-examined although the expert administering the test may be examined. Child protective proceedings involving child sex abuse are of such nature that the assessment of truth is usually most difficult. We live in an age preoccupied with science and technology. The polygraph (lie detector) presents as a tool of science. The danger is that in this type of litigation undue reliance will be placed on this proof despite its acknowledged deficiency. An expert advancing psychological or psychiatric evidence is subject to cross-examination and the entire spectrum of circumstances, both subjective and objective, underlying such evidence are potentially embraced within that examination.
This court therefor suggests that if polygraph evidence is offered in the context of circumstances which heighten the reliability aspect to a degree sufficient to warrant admissibility (albeit the weight to be given such evidence is still to be determined by the fact finder), then such evidence may be placed into the record in a child protective proceeding. It is the court’s view that polygraph evidence when obtained pur *1119 suant to court order or on stipulation of the parties and in conjunction with a psychological or psychiatric profile of the respondent would comport with "fundamental fairness” and due process and advance the policy underlying article 10 proceedings. This approach further lessens the danger of undue weight being given by the court to polygraph evidence, a laudable goal. In addition, the profile gives some indicia of the respondent’s internal mental and/or emotional processes as the subject to whom the polygraph test is administered. This factor advances the reliability aspect of the polygraph testing. To rephrase: it is well for the court to have some idea or measure of the respondent in terms of personality order or disorder and mental or emotional health or the lack thereof. For example, the fact that a respondent in a particular case is perceived as a sociopath would have a telling impact on the reliability of the polygraph results.
Accordingly as the polygraph evidence sought to be admitted herein was obtained without the procedural safeguards alluded to above and did not come in a "package”, i.e., embraced by a psychological or psychiatric profile of the respondent, the court determined that such evidence is inadmissible and adheres to the holding in People v Leone (supra).
In October 1985, the mother reported her allegations of child abuse against the father to the Bureau of Child Welfare. The family was mandated into therapy with Agnes Wohl, psychologist who also functions as a validator. The mother took the child at this time for a physical examination by a pediatrician which disclosed no signs of abuse.
On January 31, 1986, Michael’s anus appeared "raw” to the mother. She took the child to North Shore Hospital where a physical examination revealed a reddened anus with no bruises, lacerations or abrasions. The child stated that his father had put a stick into his anus.
Although Michael had been interviewed by Agnes Wohl since the beginning of November 1985, it was her interview on February 3, 1986 wherein Michael related the purported penetration of his anus by a stick and her subsequent interview of Michael on February 6, 1986 that prompted her to "validate”, i.e., conclude that Michael’s anxiety is primarily caused by sex abuse and secondarily by the divorce.
Petitioner’s case rests primarily on the child’s statements, the testimony of Agnes Wohl, the validator, and Dr. Swezey, *1120 the pediatrician.[2] The medical findings, testified to by Dr. Swezey, developed by the physical examination on January 31, 1986 are as consonant with possible abuse as with nonabufse. With the results of both physical examinations in mind the court considers the testimony of the critical expert witnesses —Ms. Wohl and Dr. Feiner and notes that it gives greater weight to the testimony of Dr. Feiner, the only expert witness who obtains the distinction of treating both the father and the child both before and after the allegations of child abuse were reported to the Bureau of Child Welfare. Dr. Feiner operated in the context of information imparted by the Lincoln Square[3] Day Care Center personnel whereas Ms. Wohl did not. Dr. Feiner declared that play action engaged in by Michael exhibited normal play situations with no overtones of sex abuse. However, he was disturbed by play action of the child wherein a building constructed of building blocks was caused to fall on the female, not the male extension, i.e., the "Mommy” doll.
Dr. Feiner’s testimony is supported by that of the child’s teacher at Lincoln Square Day Care Center, Ms. Lewis. Alerted by the mother to possible abuse in May 1985, Ms. Lewis noticed no change in Michael’s behavior although she looked for any unusual behavior, particularly at toileting time.
Ms. Wohl candidly admitted that she was unaware of Michael’s physical examination in October 1985. The lack of information regarding Michael’s behavior at the day care center and the prior physical examination in October 1985 detracts from the weight to be given the validator’s expert opinion.
The child Michael throughout the in camera interview spoke openly and easily about the alleged abuse. No overtone of guilt or shame or reluctance shadowed the child’s narration. His testimony impressed as not detailed and one dimensional. The child’s affectation in the court’s view was not consonant with the actual occurrence of such abuse.
Close observation of the demeanor of the mother at trial disclosed a certain histrionic aura which impels the court to entertain some doubt as to her veracity in all material and *1121 relevant particulars. It is notable that all the disclosures of symptoms of abuse between her and the child occurred accidentally without any initial purposeful disclosure. The respondent father impressed the court as a credible forthright witness. His temperment as displayed in the course of his testimony was even and patient with no petulance or volatile manifestation.
The court concludes that the petitioner has not prevailed by a preponderance of the evidence in proving the allegations of the petition. On this record it simply strains credulity that the respondent would perpetrate a forceful exploitive act of abuse upon his son under circumstances where numerous disinterested adult professionals conscious of their duty to protect children are, in effect, "looking over his shoulder”.
Accordingly, the petition is dismissed.

. See, Matter of Fawn S., 123 AD2d 871; see also, Matter of Tina H., 123 AD2d 864 (2d Dept 1986) for a remarkable and significant statement on the nature of a child’s unsworn in-court statement as corroboration of the child’s prior out-of-court statement.

. Name changed to protect confidentiality.