OPINION OF THE COURT
George L. Jurow, J.
This court holds that in a child sexual abuse proceeding under Family Court Act article 10, so-called "expert witness validation testimony” itself and standing alone may be sufficient corroboration of a child’s out-of-court statements so as to satisfy the corroboration requirement in Family Court Act § 1046 (a) (vi).
The question of whether, as a matter of law, validation testimony itself may satisfy the article 10 corroboration requirement is of considerable legal significance because of, first, the increasing volume of petitions filed under article 10 alleging child abuse, including child sexual abuse;[1] second, the increasing use and acceptance of "validation interviews” by experts in order to confirm whether a child has actually been sexually abused;[2] and third, recent case law holding that expert witness validation testimony is admissible under a broadly defined standard of corroboration in section 1046 (a) (vi).[3]
I. THE TESTIMONY
The essential trial testimony was as follows: In the first week of March 1987, and subsequent to a public school report of suspected child abuse, a Department of Social Services caseworker interviewed the subject child, E., age 9. E. told the caseworker that approximately a week earlier, at a time when her mother and two siblings were out shopping, her stepfather, D., put his fingers and his "dick” inside her (pointing to vagina). E. said that her stepfather threatened to beat her if she told what happened. E. also said that when her mother did learn of the incident she became angry at D. Both parents, who testified, denied the allegations, claiming that if any *199 sexual abuse did occur, it happened several years ago when the child was in temporary foster care.[4]
The validation testimony, offered to corroborate the child’s out-of-court statements to the caseworker, was provided by two clinicians on the staff of New York University-Bellevue Medical Center who described a validation interview each conducted with E., approximately one month after the alleged incident occurred.
Dr. April Kuchuk, a clinical psychologist, was qualified as an expert witness after testifying to her specific training in the assessment of alleged child sex abuse victims, and extensive experience in conducting diagnostic assessment interviews with such children. Dr. Kuchuk described the standardized methodology (protocol) she uses in conducting a validation interview. The methodology includes play or other procedures to initially relax the child; questions to test the child’s capacity for accurate recall; the use of "anatomically descriptive dolls”; and carefully phrased, questions. In addition, Dr. Kuchuk conducts her interviews "blind”, that is, without any other prior information about the case.
In her testimony, Dr. Kuchuk described in detail how she employed her standard protocol in her interview with E. In the substance of the interview, the child recounted what was told to the caseworker earlier, that is, that her stepfather put his fingers and penis in her vagina (referred to in the interview as his "dick” and her "poo-poo”). Consistent with the version given to the caseworker, the child reported the mother’s angry reaction when she learned of the incident (telling D. he was supposed to "make love to his wife not his daughter”), and threats to hurt her if she told anyone. After describ *200 ing the interview, Dr. Kuchuk explained the reasons why in her expert opinion she concluded that the child had in fact been sexually abused. These reasons might be termed "validity indicators” and were: the child had a good capacity for accurate recall; the story was clear and coherent; the child related to the examiner in an age-appropriate manner; and significantly, the child’s emotional reactions in the interview (what might be termed the child’s "affect pattern”) included manifestations of anxiety and shame that were consistent with posttraumatic stress, that is, the way individuals who have undergone traumatic events, in this instance sexual abuse, later recount the traumatic event.
The second validation interview was conducted by Dr. Richard Oberfield, a psychiatrist who is the Director of the Pediatric Psychiatry Clinic of the Department of Pediatrics at New York University-Bellevue Medical Center. After testifying to his extensive training and experience in conducting validation interviews with children alleged to have been sexually abused, Dr. Oberfield was also qualified as an expert witness. As did Dr. Kuchuk, Dr. Oberfield described his standard interview protocol and the manner in which he conducted the interview with E. Although differing in certain detail, the essence of the child’s story as recounted to Dr. Oberfield was consistent with that told to Dr. Kuchuk. Consistent with Dr. Kuchuk, Dr. Oberfield also concluded that the child exhibited numerous symptoms of prior sexual abuse. In explaining his reasons for reaching the conclusion that the child’s story was valid (reasons similar to those advanced by Dr. Kuchuk), Dr. Oberfield emphasized the important point that he found E. to be one of the most sexually preoccupied children he had seen in his long experience, an important validity indicator of actual prior sex abuse.
II. THE LAW
Family Court Act § 1046 (a) (vi) provides in part that "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect”. A companion provision in Family Court Act § 1012 (e) (iii) provides that the strict corroboration requirements of the Penal Law relating to sex offenses do not apply to civil child protective proceedings in Family Court.
Despite the mandate of section 1012 (e) (iii), disputes arose *201 in the case law as to whether the criminal standard of corroboration (requiring independent proof the occurrence as well as the identity of the perpetrator) was applicable in article 10 proceedings. In order to clarify the nature of the corroboration standard, and make clear that a more flexible standard of corroboration was appropriate in article 10 proceedings, rather than the criminal standard of corroboration, the New York State Legislature in its 1985 session added the following language to Family Court Act § 1046 (a) (vi): "Any other evidence tending to support the reliability of the [child’s] previous statements * * * shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse or neglect.”
The policy reasons behind a flexible and broadly defined standard of corroboration in child protective proceedings are obvious: The primary purpose of article 10 proceedings is to protect endangered children. In cases of child sexual abuse, eyewitness testimony or physical evidence is often lacking. As noted by the First Department, "[T]he only really meaningful evidence of abuse may be the out-of-court statements of the victim. Requiring strict corroboration, given the difficulty of proof in these cases, would utterly defeat the purpose of article 10 proceedings, which purpose can only be achieved by tipping the balance between the rights of children and of their parents in favor of protecting the children”. (Matter of Nicole V., 123 AD2d 97, 104.) Nicole V went on to hold that "[D]ue process requirements are met by permitting a finding of abuse to be made on the basis of a child’s out-of-court statement which is corroborated by any competent, nonhearsay, relevant evidence, which confirms that the child has been sexually abused and enhances the credibility of the child’s statement as to its material elements. Whether or not sufficient corroboration exists is a determination to be made on a case-by-case basis. It is not necessary that specific evidence, outside of the child’s statement, exist as to the identity of the abuser, as long as the totality of the evidence provides strong confirmation of the credibility of the child’s statements concerning commission of the act and the identity of the abuser” (supra, at 105). (See also, Matter of Joli M., 131 Misc 2d 1088; Matter of Tara H., 129 Misc 2d 508.)
With the overriding issue of defining the breadth of the corroboration standard in article 10 cases settled, it is in this context that the focus in the case law naturally shifts to what specific types of corroboration may be sufficient to meet the *202 article 10 standard. Arguably, the most important issue that has recently emerged is the question of whether so-called expert witness "validation testimony” may be received in evidence to corroborate a child’s prior out-of-court statements. The most extensive analysis of that issue was provided by the First Department in Nicole V (supra). Proceeding from the same premise that argued for a flexible standard of corroboration in child protective proceedings, the court noted the important role validation testimony may play: "In many instances, however, where there is a lack of medical evidence or inconclusive medical reports, no eyewitnesses, no admissions from the accused parent and a reluctance on the part of the victim, due to age and posttraumatic stress, to testify in court or in camera, the importance of testimony by an expert, based on what has come to be called the 'validation interview,’ will be critical. 'Validation’ is defined as the 'process by which an expert confirms or fails to confirm the existence of "intrafamilial child sex abuse syndrome” ’, and wherein '[t]he validator determines the existence of posttraumatic stress, from a cluster of behaviors’ ” (supra, at 106).
The First Department then noted the analogous acceptance in New York to admission of expert testimony on such psychological phenomena as, the battered child syndrome; the battered wife syndrome; and the rape trauma syndrome. After referring to the substantial body of literature with respect to sexually abused children, the court concluded: "[W]e hold that the opinion of an expert on intrafamilial child sexual abuse syndrome is admissible on the issue of whether a child is the victim of intrafamilial sexual abuse, as confirmed by the presence of certain symptomology discovered through the validation process, and that expert opinion can be used to corroborate the child’s prior statements” (supra, at 107).
However, the court left open the important question of whether expert validation testimony, standing alone, can be sufficient corroboration: "Whether the validation testimony may in itself be sufficient corroboration of a child’s out-of-court statements is a question we need not address here, since the record before us contains other corroborating evidence” (supra, at 108 [emphasis added]).[5]
*203 The "other corroborating evidence” referred to by the court in Nicole V consisted of "substantial medical evidence” (no hymen; persistent vaginal rashes; blood in genital area) (supra, 123 AD2d, at 108). In fact, in several other nisi prius cases in which the court admitted and relied on expert validation testimony as one element of corroboration of a child’s out-of-court statements, the other corroboration included medical evidence as well. (See, Matter of Tara H., 129 Misc 2d 508, supra [gonorrhea]; Matter of Michael G., 129 Misc 2d 186 [swelling and irritation in genital area].) Although corroborating evidence may take any variety of form, so long as it meets the flexible standard noted above, in practice (at least as reflected in the more recently reported case law) corroboration tends to cluster in 1 of 3 categories: (1) medical evidence; (2) admissions by the respondent; and (3) validation testimony. If either or both of the first two categories is lacking, the significance of the third (validation) category obviously becomes critical. The prevalence of the first category (medical evidence) deserves special mention. Although findings of sexual abuse in such cases as Nicole V., Joli M., Tara H., and Michael G. (supra) were all sustained in part on the basis of corroborating medical evidence, it would be misleading on the basis of such reported cases to assume that medical evidence is a common or prevalent accompaniment to actual sexual abuse. In reality, the opposite is more likely to be true. For example, the two experts who testified in the case at bar, each with extensive experience in evaluating cases of suspected child sexual abuse, both noted that confirmatory medical evidence is usually not present. Sgroi, a widely cited psychiatric authority on child sexual abuse, has also noted the common absence of physical evidence in cases of actual child sexual abuse. (See, Sgroi, Clinical Intervention in Child Sexual Abuse, at 75 [1982].)
III. HOLDING AND DISCUSSION
For the foregoing reasons explaining the critical role that expert witness validation testimony may play in child sexual abuse cases, it is this court’s holding that, as a general principle, such validation testimony can, in and of itself, constitute sufficient corroboration of a child’s out-of-court statements in a Family Court Act article 10 proceeding. This general principle, however, requires further specificity: It is this court’s view, and the court further holds that, when validation testimony functions as the sole corroboration of the child’s out-of-court statements, the validation evidence must *204 be "highly credible” in order to stand alone as sufficient corroboration. More specifically, in this context a "highly credible” standard for the validation testimony requires that, minimally, the validator be highly qualified; the validator use a reliable methodology or system of analysis; and the validator be able to articulate with reasonable precision the way in which the conclusions reached were a product of the methodology or system of analysis so employed.[6]
The court’s holding that validation testimony may stand alone as sufficient corroboration under circumstances whereby the validation testimony is highly credible requires amplification:
Because it is only relatively recently that validation testimony has become the subject of judicial proceedings, it is curious that its admissibility has not been discussed in the language courts often employ when considering the admissibility of novel scientific testing. The so-called "Frye” rule (see, Frye v United States, 293 F 1013) which permits new scientific evidence to be admitted if the procedure and results, if not the underlying theory, are "generally accepted as reliable in the scientific community” appears to be the general standard of admissibility in New York. (See, People v Hughes, 59 NY2d 523, 537 [hypnotically produced recall inadmissible]; see also, application of the Frye rule in People v Middleton, 54 NY2d 42 [bite mark tests admissible]; People v Allweiss, 48 NY2d 40 [hair comparison tests admissible].)
It has been pointed out that the reliability of evidence derived from a scientific principle depends upon three factors: (1) the validity of the underlying principle; (2) the validity of the technique applying that principle; and (3) the proper application of the technique on a particular occasion (the latter including the qualifications of the examiner; the use of proper procedures; and proper interpretation of the data). (Giannelli, The Admissibility of Novel Scientific Evidence: Frye v. United States, a Half-Century Later, 80 Colum L Rev 1197, 1201 [1980].) It appears that what the courts in New York have done, including the First Department in Nicole V (supra), is to implicitly, if not explicitly, endorse the validity of factor (1) above, that is, the underlying principle that the intrafamilial child sexual abuse syndrome is a recognizable psychological phenomena and that the syndrome may be *205 measured by factor (2) above, namely, the "validation process”. This court, by suggesting a "highly credible” standard for validation evidence as sole corroboration, is cautioning that proper scrutiny be given to the factor (3) above. Giannelli has correctly observed that the difficulties in the judicial use of scientific tests (defined here to include clinical validation procedures as well) are not with respect to the general underlying theory (factor [1] above) or the general technique employed (factor [2] above) but rather with whether the data is properly analyzed and relevant, that is, with problems of interpretation (factor [3] above). (Giannelli, op. cit., at 1226-1227.) As an illustration germane to the validation process, see Jampole and Weber, An Assessment of the Behavior of Sexually Abused and Nonsexually Abused Children with Anatomically Correct Dolls (11 J Child Abuse & Neglect 187-188 [1987]), noting the common use of anatomically correct dolls in validation interviewing, but cautioning that care should be taken to cross-check any interpretation of a child’s behavior in doll-play with other observational data and validation evidence, since empirical research on interpreting doll-play behavior in young children suspected of being abused is new and limited.[7]
Regardless of the complexities concerning the admissibility of evidence derived from scientific testing, and they are numerous, whether under a Frye standard or otherwise,[8] an overriding point to remember is that Family Court child protective proceedings are civil, rather than criminal, in na *206 ture and that it is therefore appropriate to err on the side of admissibility rather than inadmissibility when it comes to the introduction of evidence derived from new clinical testing techniques[9] (a criminal case might require the opposite caution and that the defendant not bear the burden of the effect of unreliability).[10] By admitting validation testimony, but exercising care in how it was derived when it constitutes the sole corroboration, the court respects the overriding purpose of article 10 proceedings in protecting children by allowing relevant clinical evidence to be admitted but under safeguards to assure minimum fairness.
Requiring validation evidence to be "highly credible” when it is the sole corroborating evidence of a child’s out-of-court statements should not be misinterpreted as requiring a "rigid” standard of corroboration, a standard that, as discussed above, has been held to be clearly incorrect in article 10 cases. Rather, a "highly credible” test, when it comes to validation evidence as the sole corroboration, is consistent with the correct "flexible standard of corroboration” test in section 1046 (a) (vi) since the flexibility is in the court’s admission of and consideration of validation evidence as a source of corroboration. The purpose of the "highly credible” standard is to provide a proper judicial safeguard in assuring that, once validation evidence is admitted, and it is to be the sole corroboration, care is taken that the methodology employed and techniques utilized were proper and reliable. In particular, since a variety of clinical techniques may be employed within a "validation interview” — e.g., structured or unstruc *207 tured play; the use of "anatomically correct dolls”; drawings; behavioral observation; oral questioning — the "highly credible” standard assures that the court carefully review the techniques utilized to assure they were applied with proper professional care and expertise and that, in turn, the conclusions derived therefrom were also sufficiently reliable.
IV. decision: application of holding to case at bar
Applying the standards enumerated above to the subject case, the court concludes that the validation testimony standing alone is highly credible and therefore sufficiently corroborates the child’s out-of-court statements. In summary analysis, the following features are relevant to the court’s determination that the validation testimony in this case was highly credible:
1. Both validators were highly qualified. Both were professionally credentialed in recognized clinical disciplines, clinical psychology and psychiatry, respectively; both had substantial training and experience in the assessment of child sexual abuse; and both hold responsible positions on the staff of a major medical center.
2. Both validators in their testimony explained the methodology they customarily employ in conducting child validation interviews. There was no contraindication to the professional reliability of the methodology employed.
3. Both validators described in detail how they applied their methodology in conducting the validation interviews.
4. Both validators described with specificity the factors that led each to conclude that the child had in fact been subjected to recent posttraumatic stress. These validity indicators included, e.g., the general consistency of the child’s story in several retellings; the good capacity for recall the child possessed; the appropriateness of the child’s narration in light of the child’s developmental level; extreme sexual preoccupation; and affective (emotional) responses by the child during the interviews consistent with victims of intrafamilial child sexual abuse (a form of posttraumatic stress).
5. Each validator testified in a highly credible manner based on the court’s observation of each witness’s demeanor, and clear, logical, and coherent manner of presentation.
6. Both validators impressed the court as independent and impartial professionals, with no apparent bias, partisan or otherwise.
7. The fact that two validation interviews were conducted by *208 two qualified experts from differing but accepted clinical disciplines, using slightly different but accepted methodology— each of whom reached the same conclusions — enhance the weight of the totality of the validation evidence.
It is important to be precise as to exactly how the validation testimony in a case such as this is linked to the corroboration requirement, which in turn is linked to the use of the child’s out-of-cóurt statements as a basis for a court finding of sexual abuse under the evidentiary standard (preponderance of the credible evidence) applicable to an article 10 proceeding. The ultimate issue of determining the child’s credibility is for the court to decide; the expert witness validator is not a substitute for the court as ultimate trier of fact.[11] Rather, the expert validator witness, utilizing his professional knowledge and skill, assists the court in assessing the reliability of the child’s statements.
As applied to the subject case, the highly credible validation evidence permits the court to use the child’s out-of-court statements as a basis for a fact finding of abuse, pursuant to Family Court Act § 1046 (a) (vi). Whether or not a finding should be made, however, requires an over-all determination by the court as to whether the child’s out-of-court statements, as explicated by the validation testimony, can support a finding of sexual abuse by a preponderance of the evidence. In answering this question in the affirmative, the court points to factors that provide sufficient probability that the respondent committed the alleged acts of sexual abuse: the child’s statements were made on a generally consistent basis to several individuals at different times; the child was of a sufficient age and developmental level so as to be capable of making a reliable statement; the child specifically named both the act of abuse and the identity of the abuser; and (as detailed above) the validation evidence was highly credible in assisting the court in concluding that the child’s out-of-court statements were reliable.
Accordingly, based on the totality of the credible evidence presented, including the child’s out-of-court statements, the validation testimony, and the failure of respondents to provide any credible contraindication to petitioner’s proof, the court concludes by a preponderance of the credible evidence that *209 respondent D. committed acts of sexual abuse with respect to the child E., specifically acts that would otherwise constitute violations of Penal Law § 130.35 (rape in the first degree) and Penal Law § 130.65 (sexual abuse in the first degree).
[Portions of opinion omitted for purposes of publication.]

. Although statistics are not available by type of abuse petition filed in Family Court, in the two-year period between calendar years 1984 and 1986 there was a 38% increase in child abuse petitions of all types filed in Family Court (citywide), and a 103% increase in all types of article 10 petitions (alleging either child abuse or child neglect). (Office of Clerk, Manhattan Fam Ct.)

. See, Sgroi, Clinical Intervention in Child Sexual Abuse (1982).

. See, Matter of Nicole V., 123 AD2d 97; Matter of Tara H., 129 Misc 2d 508; Matter of Michael G., 129 Misc 2d 186 (discussed further in text).

. An additional and highly disputed element of petitioner’s case concerned an interview the caseworker conducted with the respondent mother during which the mother used the words, "it only happened once”. Petitioner claimed that this statement constituted an admission by the mother referring to the mother’s knowledge of D.’s abuse of the child. The respondents contended that the mother, in the interview, was referring to the mother’s belief that the child may have been abused in foster care. Based on the circumstances and context of the interview the court resolved this argument in favor of the petitioner and found as a fact that the statement constituted an admission, thus providing additional corroboration of the child’s out-of-court statements. However, because of the considerable dispute surrounding the meaning of the mother’s statement, the court believes it appropriate to reach the issue of whether the validation testimony, as the only other corroboration in the case, would be sufficient for a finding of abuse.

. The only other court to address this issue in New York to date was the Dutchess County Family Court which held — on a prima facie motion to dismiss — that validation testimony along with the child’s out-of-court statements are sufficient to establish a prima facie case of child abuse. (Dutchess County Dept. of Social Servs. v Bertha C., 130 Misc 2d 1043.)

. Similar precautions were referred to by the First Department in Matter of Nicole V. (123 AD2d 97,108).

. Despite some methodological shortcomings (inherent, perhaps, in conducting research with suspected child abuse victims) the study reported by Jampole and Weber was positive in suggesting that "anatomically correct dolls are a useful instrument in child abuse investigation”. (11 J Child Abuse & Neglect 187, 192.)
Because empirical studies concerning the techniques employed in the validation of suspected child sexual abuse victims are both difficult to conduct and only now beginning to be reported, courts are well advised to give more weight to experts who (as in the case at bar) have substantial over-all professional qualifications and experience in recognized clinical disciplines (typically, psychiatry, clinical psychology, and clinical social work) coupled with specific experience in the diagnostic assessment of suspected victims of child sexual abuse.

. The Frye rule has had a lengthy and controversial history in both the Federal and State courts, as Professor Giannelli amply demonstrates in his detailed Columbia Law Review article (80 Colum L Rev 1197). Whatever one’s view may be concerning the use and application of Frye, the rule has at least served the crucial purpose of highlighting the issues that must be inescapably faced when courts address the admissibility of new or novel scientific tests and procedures.

. For an interesting debate, with differing perspectives, concerning the admissibility of expert testimony relating to polygraph examinations (an issue of long-standing controversy in judicial proceedings, and the subject matter in the original Frye case, 293 F 1013) in Family Court child protective proceedings, compare Matter of Meyer (132 Misc 2d 415) with Matter of Smith (133 Misc 2d 1115).
In favoring admissibility of polygraph evidence, the court in Meyer went so far as to analogize that type of evidence to validation evidence ("the polygraph evidence being offered appears no less reliable or helpful than the psychiatric and psychological 'validation’ evidence which is finding wide acceptance in child protective proceedings”, supra, at 419). The court in Smith demurred on this point ("A lie detector may not be cross-examined * * * An expert advancing psychological or psychiatric evidence is subject to cross-examination and the entire spectrum of circumstances * * * underlying such evidence are potentially embraced within that examination”, supra, at 1118).

. See, Saltzburg, Standards of Proof and Preliminary Questions of Fact, 27 Stan L Rev 271. 304.

. This important caveat is further discussed by Deutsch, J., in Corroboration and Validation in Child Sex-Abuse Cases, NYLJ, Sept. 15, 1986, at 1, col 3.