In the Matter of LINDA K. LESLIE K., Appellant; JOAN BER-GER, Respondent.

Second Department, November 30, 1987

APPEARANCES OF COUNSEL

*Simon & Licata (Alan M. Simon* and *Robert V. Conklin* of counsel), for appellant.

*Ilan S. Schoenberger, County Attorney (Carol L. Barbash* of counsel; *Walter Sevastian* on the brief), for respondent.

**OPINION OF THE COURT**

WEINSTEIN, J.

The instant appeal emanates from allegations that the appellant, the father of Linda K., had sexually abused his daughter, a child under 18 years of age. With respect to evidence admissible in child protective proceedings pursuant to Family Court Act article 10, Family Court Act § 1046 (a) (vi), effective August 1, 1985, provides: "previous statements made by the child relating to any allegations of abuse or neglect shall be admissible in evidence, but if uncorroborated, such statements shall not be sufficient to make a fact-finding of abuse or neglect. Any other evidence tending to support the reliability of the previous statements, including, but not limited to the types of evidence defined in this subdivision shall be sufficient corroboration. The testimony of the child shall not be necessary to make a fact-finding of abuse". The statute

fails to more specifically define what constitutes corroboration requiring courts to grapple with it on an ad hoc basis.

We are herein called upon to address the issue of whether the validation of the subject child's out-of-court statements by a psychologist constitutes the corroboration necessary to establish a prima facie case of child abuse. Under the circumstances of this case and in view of the legislative intent of the 1985 amendment to apply a more expansive and less stringent evidentiary standard, we conclude that the requisite degree of corroboration was present here.

■ The appellant father was charged in two separate proceedings with sexually abusing his then four-year-old daughter. By order of the Family Court, Rockland County (Stanger, J.), the first set of charges had been adjourned in contemplation of dismissal with permission for supervised visitation between the appellant and the child. In June 1985 a separate child abuse proceeding was brought against the appellant which contained the following specific allegations: "On or about May 26, 1985 at * * * in the [father's] bedroom, the [father] fondled said child's vaginal area (her 'privacy') and then put his penis into said child's mouth. [The father] also requested that said child fondle his penis and engaged in cunnilingus with said child." Upon the commencement of the second proceeding, the earlier charges were reinstated. A hearing was held as to both proceedings in the Family Court, Rockland County, commencing on August 2, 1985. Inasmuch as the act amending Family Court Act § 1046 (a) (vi) was specifically intended to "apply to all actions and proceedings pending or commenced on or after" its effective date of August 1, 1985 (L 1985, ch 724, § 2), it clearly applies to the instant matter.

Jeanette S., the child's mother, testified that she first had occasion to call the Child Protective Services in August 1984 based on Linda's revelations of certain things that her father had done to her in the course of his visitation with the child.* The mother related a conversation she had with her daughter: "[S]he started telling me that daddy tickles me, and I said where does daddy tickle you? And she pointed to her genitals, and she said that her father had licked her genitals, and also that her father had put something hard into her, and that it had hurt". On one of her weekend visits with the appellant,

---

* Linda K. was born out of wedlock and it is undisputed that the appellant is her father.

Linda saw him in bed with a naked girl and also witnessed two naked girls lying in bed tickling each other. In May 1985, the mother picked Linda up after a visit with the appellant in his parents' home, which visit was supposed to have been supervised. Linda informed her mother that she could not reveal everything which had transpired during the visit or else the court would take the appellant away. When the mother pursued the matter, Linda explained that when she and the appellant were lying down and she was trying to take a nap, the appellant touched her genitals and made her tickle his penis and put it in her mouth. The mother recorded the conversation and subsequently surrendered it to the police.

Dr. Robert Tuthill, a certified child psychologist who testified as an expert witness in the area of child psychology, had previously evaluated some 20 sexually abused children, and had worked with Linda on a weekly basis since February 20, 1985. The initial diagnosis was that the child suffered from an adjustment disorder with public emotional features based on the extreme anxiety which she was exhibiting in response to the turmoil at home. While Linda exhibited a great deal of confidence and trust in her mother, she initially was reluctant to make any comment about the appellant and tried to change the subject or go into some other activity when he was mentioned. In the course of his conversations with Linda, Dr. Tuthill never specifically asked her anything about sexual abuse. In June 1985, however, in response to Dr. Tuthill's query as to why she had not seen her father, Linda offered the following explanation: "because he does those things to me". When pressed for an explanation, Linda placed her finger in her vaginal area and revealed that "daddy touches me there, and licks me there, and I don't like it". Linda made reference to the sexual abuse in virtually all of her subsequent sessions with Dr. Tuthill. In the course of her conversations with Dr. Tuthill, Linda evinced an ambivalent attitude towards her father. On the one hand, she asserted that she liked him and missed him while complaining, on the other hand, that she did not like the things he had done with her. In Dr. Tuthill's experience, Linda's statements were consistent with those of other children alleged to have been sexually abused.

Dr. Tuthill testified that the only unique characteristic of sexually abused children in a clinical setting is the specificity and detail with which they will talk about sexual behavior. On numerous occasions during the course of play therapy, Linda had arranged some of her dolls and toy animals so as to

indicate involvement in different kinds of oral sexual activities. Significantly, she stated that the appellant had engaged in such conduct with her. Moreover, Dr. Tuthill testified that he found no evidence whatsoever that Linda was psychotic or unable to distinguish between fantasy and reality. On the basis of the material available to him, Dr. Tuthill concluded that it was "highly probable that the sexual abuse did take place". He negated the possibility that Linda's mother exhibited any broadly based anger against the appellant or that she might have implanted the idea of sexual abuse in Linda's mind.

Dr. Tuthill admitted on cross-examination that a record of a medical checkup in Linda's file revealed that there was no evidence of physical abuse. This did not in any way alter his conclusion, however. Dr. Tuthill was also made aware of the fact that Linda had recanted a statement she made on September 12, 1984, at the District Attorney's office moments after making it. Notwithstanding the child's repudiation of her earlier claim of sexual abuse, the witness maintained that there was "an extreme probability" that sexual abuse had occurred noting that "the repudiation was on one occasion, whereas the number of such occasions wherein she claimed that the abuse did take place, are more than one".

The appellant denied all allegations that he had sexually abused his daughter. He conceded on cross-examination that his May 26, 1985 visitation with Linda was unsupervised in contravention of an outstanding court order. Although the appellant's mother was aware of the existence of a court order requiring her and her husband to supervise her son's visits with Linda, she admitted that she had left the appellant and Linda alone on more than one occasion. The appellant's father confirmed the fact that he and his wife had traveled to New York City on May 26, 1985, leaving their son alone with Linda for a large portion of that day.

After hearing the testimony of Linda's mother, a Child Protective Services worker who had interviewed Linda, and Dr. Tuthill, in addition to two tapes which had been introduced into evidence and which contained statements concerning the alleged sexual abuse, the Family Court, in a decision dated February 13, 1986, found that the appellant did have an opportunity to commit the alleged acts of abuse with no other person present and that an "affirmative case" had been satisfactorily demonstrated with respect to the allegations brought in the second proceeding. The testimony of Dr. Tuthill was

specifically found sufficient to constitute corroboration with respect to that case. Inasmuch as Dr. Tuthill's evaluation of Linda did not relate to the allegations set forth in the first proceeding, however, the court found that that case had not been substantiated by a sufficient degree of proof to warrant any findings as to the alleged sexual abuse. Accordingly, that proceeding was dismissed. The fact-finding order entered June 5, 1986, provided: "The Court, after hearing the proofs and testimony offered in relation to the case, finds on a preponderance of the evidence that * * * Leslie K., father of Linda K., a child under the age of eighteen (18) years, being a person legally responsible for the care of the child at the relevant times mentioned herein, did commit sex offenses against said child, specifically Sodomy 1° (Penal Law § 130.50 [3]) and Sexual Abuse 1° (Penal Law § 130.65 [3])".

By dispositional order dated July 17, 1986, effective nunc pro tunc to April 8, 1986, the court made the following disposition:

"1. That Linda [K.], the abused child, is to continue her treatment with the Child Development Services or Children's Specialized Services as is designated in her best interest.

"2. That [the mother] is to obtain individual therapy.

"3. That [the father] is to obtain individual therapy.

"4. That visitation will be on every other Sunday from twelve noon to 4:00 P.M. under the supervision of Alan M. Simon, Esq. or James Licata, Esq. or a substitute which is approved by the law guardian other than [a named person].

"5. The family is also instructed to participate in family therapy on recommendation of their individual therapists".

Although the appellant purports to appeal from both of the aforementioned orders, the fact-finding order was superseded by the dispositional order. Issues raised on the appeal from the fact-finding order are brought up for review on the appeal from the dispositional order. On appeal, the appellant maintains that mere validation testimony does not constitute corroboration. The appellant argues that, in view of the stigma attached to being labeled a child abuser, due process mandates that more substantial proof must be adduced before a finding of abuse can be affirmatively established.

■ It bears noting at the outset that in a fact-finding hearing pursuant to Family Court Act article 10 to determine whether a child is abused or neglected, the statute requires that the finding of neglect or abuse be based on a preponder-

ance of the evidence rather than clear and convincing evidence *(Matter of Tammie Z.,* 66 NY2d 1; *Matter of Latrice R.,* 93 AD2d 838, *lv denied* 59 NY2d 604). "Recognizing that no criminal sanctions are imposed in these proceedings, that permanent termination of parental rights does not occur, and that the paramount concern is the immediate safety and well-being of the child, the Legislature has provided that findings of child abuse are to be based on a preponderance of the evidence" *(Matter of Nicole V.,* 123 AD2d 97, 101). Significantly, if abuse or neglect is not proven, the court must dismiss the petition (Family Ct Act § 1051 [c]) and return the child to the parents, a result which may have disastrous consequences for the child in the event an error has been made *(see, Matter of Tammie Z., supra,* at 4-5). In apparent recognition of the fact that Family Court Act article 10 has oftimes been referred to as a "Children's Bill of Rights", courts have concluded that the marked differences between criminal and Family Court proceedings justify lesser evidentiary standards in Family Court proceedings. To that end, courts are wont to accord the highest priority to the paramount purpose of the statute, to wit, the protection of children *(Matter of Michael G.,* 129 Misc 2d 186, 190).

As recognized by the Court of Appeals, the socio-legal nature of the problems which face Family Court Judges requires the exercise of considerable discretion.

"Tender years, mental health, behavior in the courtroom, the need to shield some children from the emotional trauma certain disclosures would be likely to produce, these are not the kind of considerations which Family Court Judges must or should ignore" *(Matter of Cecelia R.,* 36 NY2d 317, 322). Particularly problematic in cases of intrafamilial child sexual abuse is the fact that there are generally no admissions by culpable parties, no eyewitnesses and no direct physical evidence of abuse. These circumstances cogently evince the need for a less stringent evidentiary standard in cases of this nature.

"The unusually compelling need for children's hearsay statements in sex abuse cases is demonstrated primarily by the fact that the statements often constitute the only proof of the crime. Physical corroboration is rare, for the crimes committed are predominantly nonviolent in nature. Most crimes consist of petting, exhibitionism, fondling, and oral copulation, activities that do not involve forceful physical contact. The lack of physical corroboration can also be attrib-

uted to the fact that most children, for a variety of reasons, do not resist their attackers and succumb easily.

"In addition, witnesses other than the victim and perpetrator are rare; people simply do not molest children in front of others. Most often, the offender is a relative or close acquaintance of the child who is likely to have many opportunities to be alone with the child" (Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases,* 83 Colum L Rev 1745, 1749-1750 [1983]).

In view of these unique problems and "the potentially draconian results of either an erroneous finding of abuse against a parent or an erroneous dismissal, both the Legislature and the courts have broadened the rules of evidence in child protective proceedings to permit the trial court to receive relevant evidence which would not be admissible in other litigations" *(Matter of Meyer,* 132 Misc 2d 415, 419). While traditional rules of evidence are significantly relaxed in article 10 child protective proceedings, hearsay or unsworn testimony of the subject child, while admissible under Family Court Act § 1046 (a) (vi), must be corroborated by other evidence in order for a prima facie case of abuse to be established. "The policy served by requiring corroboration of a victim's out-of-court statements in a child protective proceeding is to assure that a fact-finding determination is not being made on the basis of hearsay evidence alone" *(Matter of Ryan D.,* 125 AD2d 160, 165). Moreover, the quantum of corroboration required in proceedings commenced pursuant to article 10 of the Family Court Act is substantially less exacting than that required in criminal cases *(see,* Family Ct Act § 1012 [e] [iii]; *Matter of Cindy JJ.,* 105 AD2d 189, 190-191; *Dutchess County Dept. of Social Servs. [Janet C.] v Bertha C.,* 130 Misc 2d 1043, 1045; *Matter of Meyer, supra,* at 418).

In the memorandum submitted in support of the 1985 amendment to Family Court Act § 1046 (a) (vi) by Senator Mary B. Goodhue, the intent of the Legislature was made abundantly clear. "The purpose of this bill is to expressly provide that the child's testimony is not necessary as corroboration of out-of-court statements of the child admitted into evidence, but that any evidence shall be sufficient to corroborate the out-of-court statements as the basis of a family court fact finding of child abuse or neglect. Present law requires corroboration of any out-of-court statement which is to be the basis of a finding of abuse or neglect. This amendment does not change that standard, but specifies that any other evi-

dence is sufficient to corroborate the previous statement, and that the testimony of the child is not necessary as corroboration" (1985 NY Legis Ann, at 259).

The memorandum labels as "appropriate" the standard of corroboration referred to in *Matter of Tara H.* (129 Misc 2d 508, 514), a precursor to the 1985 amendment. There the Family Court, Westchester County, referred to the common-law definition of corroboration and corroborating evidence contained in Ballentine's Law Dictionary 276 (3d ed), to wit, "evidence of such substantial facts and circumstances as will produce in a sound and prudently cautious mind a confident conclusion that the testimony of the complainant is true in all essentials", and "[a]dditional evidence of a different character to [confirm] the same point * * * [s]uch * * * as tends to confirm and strengthen the testimony of the witness * * * such as tends to show its truth, or the probability of its truth". Stated succinctly, the 1985 amendment to Family Court Act § 1046 (a) (vi) makes it clear that a standard of corroboration less stringent than that applicable to criminal prosecutions was intended in child protective proceedings (1985 NY Legis Ann, at 260; *Matter of Ryan D., supra,* at 165). As the Appellate Division, First Department, noted in *Matter of Nicole V.* (123 AD2d 97, 105, *supra): "Because due process requirements must vary with the subject matter and necessities of the situation * * * and these Family Court proceedings are designed to protect victims from further harm, not punish the offenders or even terminate their parental rights permanently, we conclude that due process requirements are met by permitting a finding of abuse to be made on the basis of a child's out-of-court statement which is corroborated by any competent, nonhearsay, relevant evidence, which confirms that the child has been sexually abused and enhances the credibility of the child's statement as to its material elements".

Having established beyond cavil that the appropriate standard for ascertaining what constitutes corroborative evidence is not unduly stringent *(see, Matter of Fawn S.,* 123 AD2d 871, 872), we now proceed to examine specific illustrations of corroborative evidence which have been deemed sufficient. While adequate corroboration under article 10 can assume many forms *(see, Matter of Ryan D., supra,* at 165), our focus here is restricted to the validation testimony of experts regarding their investigations of the underlying complaints.

Initially, we note the propensity of this court to consider all

possible sources of corroborating evidence, particularly in situations where the allegedly abused child is reluctant to speak *(see, Matter of Dana F.,* 113 AD2d 939, 940; *accord, Matter of Fawn S., supra,* at 872). In *Matter of Dana F.* the matter was remitted to the Family Court with the specific directive to hear testimony from the child's pediatrician, psychiatrist and/or caseworker regarding their investigations into the complaint. More recently, we have found a child's out-of-court statements, when corroborated by medical evidence and the expert conclusion of a social worker that the child had been abused, sufficient to set forth a prima facie case *(Matter of Kimberly K.,* 123 AD2d 865). In the instant case, however, there was no physical evidence of sexual abuse. This situation, as previously discussed, is not uncommon in matters of this nature. As a result, our attention now focuses solely upon the legal sufficiency of the testimony of the child's psychologist, an acknowledged expert in his field.

Concededly, "[i]n cases of sexual abuse in which the trier of fact most likely will decide a case based upon the credibility of the witnesses, expert testimony is an important tool in bolstering the credibility of the child victim" (Comment, *The Admissibility of Expert Testimony in Intrafamily Child Sexual Abuse Cases,* 34 UCLA L Rev 175, 177 [1986]). As recognized by the Appellate Division, First Department, in *Matter of Nicole V.* ( 123 AD2d 97, 106, *supra),* the importance of expert testimony based on what has come to be called the "validation interview" is critical, particularly in cases where there is a lack of medical evidence, no eyewitnesses, no admissions by the accused and a reluctance on the part of the victim, due to age and posttraumatic stress, to come forward. "Validation" has been defined as "the process by which an expert confirms or fails to confirm the existence of 'intrafamilial child sex abuse syndrome' " *(Matter of Michael G.,* 129 Misc 2d 186, 192, quoting from Sgroi, Handbook of Clinical Intervention in Child Sexual Abuse [Livingston Books 1982]) and "determines the existence of posttraumatic stress, from a cluster of behaviors" *(Matter of Michael G., supra,* at 192). "A 'validation' offering is simply expert testimony given by a witness who, after being duly qualified by the court in the area of intrafamilial child sexual abuse, provided *[sic]* the court, like any other expert in a particular art or science, with explications and opinions for the court to consider and assess" (Deutsch, *Corroboration and Validation in Child Sex Abuse Cases in the Family Court,* III [No. 1] Law Guardian Rep 1, 2 [1987]).

■ The court's acceptance of the testimony of the validating expert as corroboration in an article 10 proceeding is not unfair inasmuch as the expert is independent of both the petitioner and respondent, having been appointed solely to represent the best interests of the child and to assist the court in its quest for the truth. Moreover, the expert's qualifications are subject to objection and he or she is available for cross-examination (*Matter of Tara H.,* 129 Misc 2d 508, 515, *supra*). Expert testimony regarding intrafamilial child sexual abuse syndrome has been admitted in a number of reported cases in this State (*see, Matter of Ryan D.,* 125 AD2d 160, *supra; Matter of Nicole V., supra; Dutchess County Dept. of Social Servs. [Janet C.] v Bertha C.,* 130 Misc 2d 1043, *supra; Matter of Tara H., supra; Matter of Michael G.,* 129 Misc 2d 186, *supra*). Similar testimony has been ruled permissible as evidence in other States as well (*see, e.g., State v Carlson,* 360 NW2d 442 [Minn]; *State v Myers,* 359 NW2d 604 [Minn]; *State v Middleton,* 294 Ore 427, 657 P2d 1215; *State v Kim,* 64 Haw 598, 645 P2d 1330).

Further evidence of the widespread acceptance of expert testimony is provided by *Matter of Tantalyn TT.* (115 AD2d 799, 801) wherein the Appellate Division, Third Department, found that the behavioral signs of abuse observed by the caseworker and the teacher and counselor of one of the abused children in a family substantiated the statements of the children, each of which was deemed corroborative of the other. In *Matter of Carew* (131 Misc 2d 835), the Family Court, Suffolk County, directed that the two allegedly abused children be interviewed by an expert agreed to by the parties or, if there was no agreement, by a court-designated expert (*see also, Matter of Meyer,* 132 Misc 2d 415, 419, *supra,* where widespread acceptance of expert validation evidence was acknowledged).

By way of a general guideline, the following observation by Family Court Judge Leon Deutsch is instructive: "[B]y requiring a case-by-case determination to be made and by choosing not to set specific guidelines for the trial court as to how and to what extent such expert testimony is to be used for purposes of corroboration under FCA Section 1046 (a) (vi), both the First and Second Departments have wisely determined to permit the trial court to exercise sound discretion in the reception and treatment of such expert testimony. At all events, it is now beyond question that such expert testimony,

characterized by some as 'validation' testimony, is allowable in appropriate cases for the purpose of supplying corroboration of the child's out-of-court statements, and thereby make *[sic]* out a prima facie case of child sex abuse" (Deutsch, *Corroboration and Validation in Child Sex Abuse Cases in the Family Court,* III [No. 1] Law Guardian Rep 1, 2 [1987]).

In evaluating the quality of the expert testimony in the instant case, a number of salient factors cannot be overlooked. Firstly, Dr. Tuthill's testimony was predicated on more than five months of weekly therapy sessions with Linda. Secondly, the detail and precision of Linda's description of the sexual acts to which she had been subjected, while unusual for a child of her tender years, is consistent with the behavior of sexually abused children in a clinical setting. Moreover, the fact that Linda was able to give explicit details of her encounters reflects a strong improbability that her statements were mere fabrications *(see, Matter of T. G.,* 128 Misc 2d 914, 916). Thirdly, Linda's involvement of her dolls in oral sexual activity during the course of play therapy and her comments that her father had engaged in such conduct with her are significant. In a somewhat similar vein, the California Court of Appeal, Second District, has held that where the evidence shows that a three-year-old child exhibited conduct during play therapy which indicated that she had been exposed to inappropriate sexual conduct with a male, and had used certain names in reference to genitalia, all in a manner characteristic of children who have been sexually abused, charges of child abuse would be sustained *(Matter of Cheryl H.,* 153 Cal App 3d 1098, 1118-1119, 200 Cal Rptr 789, 800-801). At bar, the case against the appellant is even stronger in that Linda specifically implicated her father in the conduct which she had depicted with her dolls. Fourthly, there was, in the instant case, no indication whatsoever that Linda was unable to differentiate fantasy from reality or that her mother was responsible for suggesting to the child that the appellant had sexually abused her.

It cannot be gainsaid that in cases of child sexual abuse where both eyewitness testimony and physical evidence of abuse are rare, the ideal witness will be the alleged victim's treating psychologist or psychiatrist who has developed a rapport with the child and who has had an ongoing opportunity to witness that child's emotional reactions over a period of time. Dr. Tuthill was precisely such a witness in the instant case. Unlike the situation in the recent case of *Matter of*

*Robert M. A.* (129 AD2d 699, *affg* 132 Misc 2d 113), where the allegedly abused child refused to indicate, in his sessions with a child psychiatrist, that anything of a sexual nature had occurred between himself and his father, Dr. Tuthill's validation evidence was especially corroborative of Linda's statements. His opinion as to the "extreme probability" that sexual abuse had occurred was based on the nature of the statements made by Linda, their consistency over a period of time and his observation of certain behavioral patterns in Linda.

In view of the unequivocal language of Family Court Act § 1046 (a) (vi) and the clear intent of the Legislature, we conclude that the validation testimony of Dr. Tuthill constituted sufficient corroboration of Linda's out-of-court statements. Accordingly, the Family Court's finding of sexual abuse was supported by a preponderance of the evidence and the dispositional order should be affirmed.

MOLLEN, P. J., BROWN and RUBIN, JJ., concur.

Ordered that the appeal from the order entered June 5, 1986, is dismissed, without costs or disbursements, as that order was superseded by the order dated July 17, 1986; and it is further,

Ordered that the order dated July 17, 1986, is affirmed, without costs or disbursements.