■ In the Matter of JAMES P. and Others, Children Alleged to be Neglected or Abused. RONALD J. et al., Respondents; COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant.—Order, Family Court, New York County (Bruce M. Kaplan, J.), entered on or about November 21, 1988, which dismissed petitioner's child protective petition filed against Ronald J. and Vivian P., unanimously reversed, on the law and the facts, without costs and without disbursements, the petition reinstated and the following findings made: (1) against Ronald J. that James P. is an abused child; and (2) against Vivian P. that James P., Ronald J., Jr. and Shaila J. are neglected children. The matter is remanded for a dispositional

hearing before another Judge of that court, pending which the remand status of these children is continued.

This case presents a somewhat unusual family constellation. Respondent Vivian P. is the mother of five children, three of them with her husband Thomas P. (Tara P., Tommy P., and James P.). Arising out of an intimate relationship with Ronald J., which commenced in 1984, she had two children (Ronald J., Jr. and Shaila J.). Vivian lived with Ronald from 1984 through 1988, when she again took up residence with her husband, Thomas. The apartments of Ronald and Thomas are in the same neighborhood, a few blocks apart. Even when she was living with Ronald, Vivian made regular visits to see her children, and when Vivian rejoined her husband taking the two J. children with her, Ronald would visit them there at times when Thomas was not at home.

The main issue presented for trial by the Commissioner's petition, as amended, was whether Ronald had committed three acts of sexual abuse upon James P., who, at the time of trial, was eight years old. Prior to trial the three older P. children had been sent by Special Services for Children (SSC) to reside in the home of their maternal aunt. During that placement James complained to his aunt that he had been sexually abused by Ronald J. when he had been living in his father's apartment. SSC referred James to Dr. Anne H. Meltzer, a psychologist highly qualified as an expert in the field of child sexual abuse syndrome. Pursuant to Family Court Act § 1046 (a) (vi), which provides that previous out-of-court statements made by a child regarding allegations of abuse or neglect, if corroborated,* are sufficient to make a fact finding of abuse or neglect, Dr. Meltzer recounted the substance of two separate interviews with James P. in which the child described three instances of sexual abuse by Ronald J., consisting of fondling and kissing his penis and digital penetration of his rectum. It was Dr. Meltzer's opinion that James P., an academically delayed child, would be incapable of fabricating these episodes. James also mentioned to Dr. Meltzer that Ronald J. frequently got drunk and that his mother drank with him as well. Leonard Esteves, a social worker, told the court that James had made similar complaints to him. A police officer, Sergeant Paul Hayes, testified that while investigating a suspected child abuse complaint he visited the J.

---

* The validating testimony of this expert itself provided sufficient corroboration (Matter of Linda K., 132 AD2d 149). The statute dispenses with need for the abused child to testify.

home where he found Ronald Jr. and Shaila under Vivian P.'s supervision. He reported that the children were extremely dirty and that Shaila's diaper "looked like it was on for four or five days". Vivian P. appeared to this officer to be incoherent, "under the influence of something", unkempt and with speech slurred. Clearly, petitioner had established a strong prima facie case of both child abuse and child neglect against respondents.

Respondents Vivian P. and Ronald J. testified and denied all incidents of child abuse and neglect. Significantly, however, these witnesses contradicted each other with respect to the degree of solitary access that Ronald J. had with James P. Ronald J. admitted that he visited the P. apartment two or three times per week between February or March and May of 1988 to see his two children who lived there. Mr. Esteves' testimony also placed Ronald J. in the P. apartment on some of this social worker's visitations there.

Following the fact-finding hearing, the presiding Judge issued an oral decision of dismissal from the Bench. With only passing reference to the testimony of Dr. Meltzer and the other proofs of petitioner, the hearing court discredited the statements of James and the evaluation by Dr. Meltzer that they were true, and drew inferences which were wholly unsupported by the record. The most significant of these was that the maternal aunt had induced James to fabricate his complaints because of the surmised neighborhood humiliation that members of the P. family had experienced as the result of the meretricious conduct of Vivian with Ronald. The court noted that this was an interracial relationship which, in its opinion, particularly contributed to the wholly suppositious bias of the aunt. None of these conclusions finds support in any of the evidence adduced before the court. Thus while we are aware that considerable deference must be given to the trial court in its appraisal of the credibility of witnesses (Matter of Irene O., 38 NY2d 776, 777), this is a case in which the evidence is compelling in favor of the petition, with nothing but self-serving denials, containing many obvious exaggerations and internal inconsistencies, arrayed against it.

We would be remiss in our role as a reviewing court to conclude that recognition of the trial court's greater opportunity to see and hear the witnesses is sufficient to sustain this order. Accordingly we have made new findings based upon our own detailed review of the record, and remand for an appropriate dispositional hearing consistent with the foregoing.

Concur—Kupferman, J. P., Ross, Milonas, Rosenberger and Wallach, JJ.