*170 OPINION OF THE COURT
Howard Spitz, J.
With the ever-increasing tide of cases charging child sexual abuse, the court is called upon to again determine whether a child must be protected from her alleged abuser, a trusted parent. Each endangered child becomes a fresh challenge to the legal system to render essential protection to the child, while balancing the countervailing rights of the accused.
The issue raised in this proceeding is whether the evidence adduced at the fact-finding hearing is sufficient to support a finding of sexual abuse pursuant to article 10 of the Family Court Act. In this regard, the court has reviewed the very recent decision of the United States Supreme Court in Idaho v Wright (497 US —, 111 L Ed 2d 638) on the issue of corroboration of a child victim’s out-of-court unsworn statement and its applicability to this article 10 abuse proceeding.
The petition filed in the instant matter by the Westchester County Department of Social Services alleges that respondent, Luis S., sexually abused this three-year-old daughter, Linda. Respondent denied the allegations of the petition and a fact-finding hearing was held.
The proof adduced at the hearing established that for approximately one month, in March 1989, the child resided with her father while her mother was in a drug rehabilitation program. Thereafter, in November 1989, the child told her mother that "Papi” had touched her "private” parts, and she pointed to the vaginal area. The act had allegedly occurred during March 1989, when Linda was living with her father. The child repeated her statement and gesture to her mother on 4 or 5 occasions.
Dr. Virginia Strand, who is a certified social worker, was qualified by the court as an expert in child sexual abuse. Dr. Strand has a D.S.W. degree from Columbia University School of Social Work, and is a director of the child sexual abuse training program at Fordham University, where she is also an assistant professor. Dr. Strand has been an expert consultant to and director of domestic violence and sexual assault programs since 1977. She has investigated more than 100 cases over a six-year period, and concluded that child sexual abuse occurred in 60% of those cases.
Dr. Strand testified that she conducted three interviews with Linda. She explained that in assessing the reliability of a child’s allegations, she looks for ability to demonstrate the *171 sexual abuse, and the consistency, specificity and detail of the child’s statements. She denied using leading questions during her interviews of the child.
In the first of three interviews, Linda told Dr. Strand that "Papi” touched her "private” parts, pointing to her vaginal area. She also said that he put his "doodle” (penis) in her private part. When , asked whether he put it anywhere else, Linda said that he put it in her mouth, that it was hard and soft, and moved in her mouth. The child also stated that "Miss Y.”, a teacher in the day-care center she attended, touched her "private”, and that Linda licked Miss Y.’s "private”.
During the second interview, Linda picked up a toy telephone which was in the interviewing room, "called” "Papi” and told him not to touch her "private” any more.
In the third interview, Dr. Strand showed Linda an anatomical drawing of a child, and asked her to color the parts of the body where her father had touched her. She colored the mouth and vagina. When asked where Y. had touched her, she colored the buttocks and vagina. When asked to color an adult female drawing showing her contact with Miss Y., she colored the hand and vagina, stating that she had to lick Miss Y. and that it tasted "nasty” and "smelled like private”. On the adult male drawing, she colored the hands and penis.
Dr. Strand further testified that she also considered the mother’s observations of the child’s changes in behavior, including her excessive masterbation, sexualizing with dolls, deteriorating eating habits after the mother returned from the rehabilitation program, Linda’s resistance to sleeping alone, and her nightmares. The mother had also seen the child lying on top of a Mickey Mouse doll, "pumping” it.
Dr. Strand stated that she was convinced that "Papi” that the child referred to as the abuser was Linda’s father, Luis S., and not her grandfather, whom Linda also called "Papi” or "Papi Joe”.
Dr. Strand concluded that in her expert opinion, Linda exhibited all five phases of the child sexual abuse syndrome (Sgroi, Handbook of Clinical Intervention in Child Sexual Abuse), including her behavior, specificity and detail as to smell and taste and consistency of statements, and that she had been sexually abused by her father, Luis S.
The foster mother with whom Linda has resided since March 1990 testified that the child spontaneously told her of the alleged sexual abuse on June 10, 1990 when she applied *172 salve to Linda’s genital area. Linda said that was where "Papi” had touched her. On June 14, when she again applied the salve, Linda stated that was where "brownpapi” had touched her. The foster mother also related that Linda had nightmares about snakes and roaches when she first arrived, but that they had diminished with the passage of time.
The social worker, Joanne Krol, testified that she had first been called to interview the child on November 29, 1989. On December 6, 1989, Linda told her that “Papi” had touched her "private” parts, and that "Miss Y.” was with her father at the time. Linda clarified to Ms. Krol that "Papi” was her father, "Papi Luis”. In a February 23, 1990 interview, Linda repeated the statements, adding that her father also touched Miss Y. in her Mama’s bed.
Miss Krol further testified that while she and the child were in a car that passed a day-care center, Linda pointed to it, saying that "Miss Y. touched me there,” and "Papi touched me” pointing to her vaginal area. The social worker inquired "Papi who?” and the child replied, "Papi Luis”.
Respondent testified and denied all allegations of abuse of Linda, and any relationship with Miss Y.
Article 10 of the Family Court Act was enacted in an effort to prevent and detect the sexual abuse of children in a family setting, and "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being” (Family Ct Act § 1011). The statute expressly authorizes the State to intervene to protect a child against the wishes of a parent, while ensuring the parent’s due process rights (§ 1011).
Section 1046 (b) (i) of the Family Court Act provides that an adjudication of child abuse must only be based upon a preponderance of the evidence.
The reasoning behind the relaxed rules is apparent. Sexual abuse in family settings is a matter of social and judicial concern. Acts of abuse are difficult to detect. They are nonviolent, occur in secret, usually with the child as the only witness. Blame is difficult to fix where there is a lack of evidence and reluctance or inability of the victims to testify (Matter of Nicole V., 71 NY2d 112, 117).
The result of an erroneous fact finding in favor of a parent is to permit a helpless, abused child to remain in or be returned to the custody of an abusive parent without the child obtaining the protection of State intervention. As a result, due *173 process requirements must vary with the subject matter and necessities of the situation (Matter of Cecilia R., 36 NY2d 317). The Family Court procedures set forth are designed to protect victims from further harm, not to punish the offenders or even to terminate their parental rights (Matter of Nicole V., supra).
In Matter of Nicole V. (supra, at 117), the New York Court of Appeals stated that child protective proceedings are civil in nature. Because the respondent parent is not subject to criminal sanctions, the usual rules of criminal evidence do not apply. "Unsworn out-of-court statements of the victim may be received and, if properly corroborated, will support a finding of abuse or neglect” (supra, at 117-118, citing Family Ct Act § 1046 [a] [vi]).
Corroboration is required because the out-of-court statements are hearsay and some further evidence is required to establish their reliability. The court in Nicole V. (supra) stated that section 1046 (a) (vi) was amended to clarify that the corroboration requirements of the criminal law are not applicable to article 10 civil proceedings. The amended section 1046 (a) (vi) sets forth a broad rule that out-of-court statements can be corroborated by "[a]ny other evidence tending to support the reliability of the previous statements”.
Within the context of this article 10 sex abuse proceeding, this court was presented with the issue of whether the evidentiary standard and reasoning enunciated in the very recent decision of the United States Supreme Court in Idaho v Wright (497 US —, 111 L Ed 2d 638) applies to an article 10 proceeding. Wright involved the issue of corroboration of the out-of-court statement of a child victim of sexual abuse in a criminal proceeding. The Supreme Court considered whether the hearsay statement of a three year old to a doctor contained sufficient "indicia of reliability” to be admissible under the Confrontation Clause of the Sixth Amendment. The doctor utilized leading questions to elicit the statement, and did not videotape the interview. However, the child’s statements were corroborated by testimony from her older sister and physical evidence of sexual abuse to both children.
Justice O’Connor, writing for a five-Judge majority, stated that the "relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief.” The hearsay statement of the child "must possess indicia of reliability by virtue *174 of its inherent trustworthiness, not by reference to other evidence at trial” (supra, 497 US, at —, —, 111 L Ed 2d, at 655, 657).
In essence, the court is opining in Wright (supra) that corroboration is irrelevant to the issue of reliability (see, Capra, Child-Witness Statements and the Right to Confrontation, NYLJ, July 13, 1990, at 3, col 1, for an excellent analysis). Application of the principles enunciated in Wright to article 10 proceedings would invalidate much of the statutory and case law as it presently exists.
The 6th Amendment of the US Constitution provides for the right of confrontation [i]n all criminal prosecutions” (emphasis added). The difference between an article 10 proceeding, which is remedial; civil in nature; designed to protect the victim from further harm; and does not provide for criminal sanctions, versus a criminal proceeding, which is punitive in nature, results in this court’s determination that the standard set forth in Wright (supra) does not apply to child protective proceedings. To hold otherwise would negate the purpose of article 10 proceedings and result in the State’s inability to protect helpless children from intrafamilial sexual abuse.
The United States Supreme Court recently reaffirmed the State’s "' "transcendent interest in protecting the welfare of children” ’ ” in permitting the use of closed-circuit television taping of child witnesses in criminal proceedings, when necessary to protect the child (Maryland v Craig, 497 US —, —, 111 L Ed 2d 666, 684 [June 27, 1990]).
The issue in this case is whether, in the absence of medical evidence, eyewitnesses, or admissions by the respondent, Linda’s out-of-court statements can be sufficiently corroborated by the validation testimony. Validation is the "process by which an expert confirms or fails to confirm the existence of 'intrafamilial child sex abuse syndrome’ ” (Matter of Michael G., 129 Misc 2d 186, 192).
The child sexual abuse syndrome is a recognized diagnosis. Courts have allowed expert diagnoses to corroborate out-of-court statements, particularly when the validator is an independent expert. In Matter of Nicole V (supra, at 121) the validator based her finding of abuse on the child’s demonstration of the classic behavioral symptoms of child sexual abuse, posttraumatic stress, and specific knowledge of sexual activity.
Corroboration of a child’s out-of-court statement by expert testimony is "not unfair inasmuch as the expert is indepen *175 dent of both the petitioner and respondent, having been appointed solely to represent the best interests of the child and to assist the court in its quest for the truth” (Matter of Linda K., 132 AD2d 149, 159). In Linda K. (supra) the validator testified that the child’s discussion of sexual behavior with great explicitness and detail was a unique characteristic of the sexually abused child. The court noted that this conclusion was not indicative of coaching by the mother or that the child could not distinguish reality from fantasy.
Other courts have also accepted the testimony of a validator as sufficient corroboration pursuant to Family Court Act § 1046 (a) (vi) (Matter of Starr H., 156 AD2d 1025; Matter of Ryan D., 125 AD2d 160; Dutchess County Dept. of Social Servs. v Berth C., 130 Misc 2d 1043; Matter of Elizabeth O., NYLJ, Sept. 20,1989, at 26, col 3).
In the case at hand, the validator and social worker presented highly credible testimony. The intrafamilial child sexual abuse syndrome is acknowledged and accepted as a validating method. The validator testified that Linda fit all five phases of the syndrome. Linda’s statements were made on different occasions to four persons, and were consistent. The specificity and detail of Linda’s statements, particularly references to taste and to smell, are further indicia of the child’s credibility. Linda also exhibited behavioral changes (excessive masterbation, sexualizing with dolls) and knowledge of sexual behavior beyond her years.
Although there was some confusion as to whether Linda referred to her father or grandfather when she used the term "Papi”, this court is satisfied that in referring to acts of abuse, Linda meant "Papi Luis”, respondent father.
Based upon all of the proof adduced at the hearing, including the highly credible testimony of Dr. Strand, the foster mother and social worker, the court finds that the respondent, Luis S., committed sexual abuse in the first degree (Penal Law § 130.65 [3]), and sodomy in the first degree (Penal Law § 130.50 [3]) and that Linda is an abused child under section 1012 (e) (iii) of the Family Court Act.
This court calls upon the Legislature to enact a statute setting forth guidelines for validation interviews, which should include the automatic videotaping of all interviews. This procedure would enable the respondent to examine the procedures utilized in the interviews, and preempt the use of leading and suggestive questions by the validator. Another *176 beneficial result would be that the videotaped validation interview would reduce the need for second evaluations regularly requested by respondents.
A dispositional hearing is scheduled for October 5, 1990 at 2:30 p.m. All parties are to appear in court on that date. Counsel for petitioner shall settle an order on notice to all parties.