Matter of Alexandria P. (2005 NY Slip Op 51640(U))

[*1]

Matter of Alexandria P.

2005 NY Slip Op 51640(U) [9 Misc 3d 1118(A)]

Decided on August 4, 2005

Family Court, Monroe County

Ruhlmann, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 4, 2005

Family Court, Monroe County
In the Matter of ALEXANDRIA P. and GABRIELLA D., Children under the Age of Eighteen Years Alleged to be Abused and Neglected by MARK D., RESPONDENT.
NA-05385-04

Peter A. Essley, Esq. for Petitioner
Howard A. Bloch, Esq. for Respondent
Katherine M. Gladstone, Esq., Law Guardian

Dandrea L. Ruhlmann, J.
This is a sexual abuse case. Monroe County Department of Human and Health Services, Division of Social Services, by caseworker Robert Way (Petitioner) filed a petition on April 30, 2004 alleging that Mark D. (Respondent) sexually abused and neglected his step-daughter Alexandria and derivatively abused and neglected his daughter Gabriella. A fact finding hearing was conducted over the course of ten days. Petitioner did not prove by a preponderance of the evidence that Respondent abused or neglected Alexandria or Gabriella.
Findings of Fact:
Alexandria's mother, Gena P., and her biological father separated when Alexandria was only three months old. Gena met Respondent at the New Life Assembly Church and they married in April, 1996. Respondent had two children from a prior marriage, Markie and Kayla, and they visited Respondent for overnights at least every weekend. In 1999, after Gabriella was born, the blended family moved into the more spacious half of a two-family house (the Maplewood house). In November 2001, Gena and Respondent separated and Gena, Alexandria and Gabriella moved out of the Maplewood house. Alexandria and Gabriella returned to the Maplewood house for overnight visitation approximately every weekend. In September 2003, Respondent moved out of the Maplewood house to Wheatland.
Sometime around late 2002, Alexandria told her mother that she had been touched inappropriately by a boy named Xavier who used to live in the Maplewood neighborhood. The [*2]following summer, Alexandria went to visit her biological father for the first time in at least a couple of years. That fall, Alexandria began to see a psychologist, Dr. McCann. Alexandria disclosed the subject allegations concerning Respondent to her mother in April 2004. Gena did not talk to her daughter about the allegations but instead informed Dr. McCann, and Dr. McCann made a referral to child protective services. An investigation resulted in an indicated report of child abuse against Respondent. This trial ensued.
Petitioner's case consisted entirely of only two witnesses, Alexandria and Caseworker Robert Way, and a rebuttal witness, Alexandria's Aunt Sabrina. Alexandria testified that when she was in the third and fourth grades Respondent came into her bedroom at night and fondled her breasts and vaginal area somewhere between ten and 100 times and put his finger in her vagina on more than one occasion. These incidents allegedly began when Alexandria still lived at the Maplewood house and continued after Alexandria visited for overnights. Alexandria stated that when she found Respondent in bed with her, she told Respondent to leave and after he left her bedroom she attempted to barricade her door with a metal folding chair. Alexandria further testified that after Respondent left her bedroom, he went into the bathroom and locked the door. Alexandria did not give details with regard to any of the times that Respondent allegedly came into her room at night. She was specific only with regard to one incident that allegedly occurred when she was about seven or eight years old. Alexandria testified that at that time Respondent touched her under her sports bra and commented on her developing breasts.
Alexandria's testimony was also non-specific regarding her alleged confrontations with Respondent about the abuse. She stated that Respondent told her more than once that the abuse would not happen again and warned her not to tell anybody or else he would get in trouble and would be taken away. However, except for one discussion which allegedly took place in a car and one conversation where Respondent allegedly told Alexandria that he touched her because he missed Gena, Alexandria did not remember any details about when or where Respondent made any admissions or threats.
Alexandria admitted that she previously accused Xavier of similar inappropriate touching but testified that she made up such allegations of abuse because she "wanted to get help for what had happened [with Respondent], but [she] didn't want anybody to know who it was, who really did it." However, Alexandria waited a year and a half from the time she falsely accused Xavier of inappropriate sexual contact until she disclosed that Respondent was the alleged perpetrator. Further, she did not admit that she lied about Xavier until preparation for this trial.
Petitioner's other witness, Caseworker Robert Way, testified that he and a police investigator interviewed Alexandria about her allegations against Respondent. During that interview, Alexandria alleged that Respondent went into her room at least six or seven times at night while she was asleep and rubbed her vaginal area skin on skin. She also alleged that Respondent touched her chest several times. In addition to attempting to keep Respondent out of her bedroom with the metal folding chair, Alexandria said that she sometimes locked herself in the bathroom and fell asleep on the floor. Way admitted that there were differences between Alexandria's testimony and her statement but believed that the two versions of events were for the most part [*3]consistent. However, Way was never qualified as an expert.
Way testified that he also interviewed Respondent, Gena, Gabriella, Respondent's ex-wife Carmella S. and Respondent's other children Markie and Kayla with regard to Alexandria's allegations. Respondent was shocked by the allegations and vehemently denied them. Only when pressed, Respondent stated that he participated in many physical activities with his children such as wrestling and swimming and that Alexandria possibly misconstrued contact during such activity. All three children Gabriella, Markie and Kayla denied any abuse and Gena and Carmella were very surprised by the allegations.
Respondent testified on his own behalf and denied the allegations. He testified that Way hounded him by asking in many different ways if it was possible that he touched Alexandria inappropriately. Way also kept implying that accidental contact could have occurred. Respondent admitted that he had a lapse in judgment once when he twisted Alexandria's nipple over her clothing after she snuck up behind him and twisted his nipple. He testified that he reacted poorly but was trying to teach Alexandria a lesson. Inexplicably, neither Petitioner's counsel nor the Law Guardian addressed the nipple twisting incident with Alexandria during her testimony.
Respondent testified at great length about his love for his children and his church. He stated that Alexandria always showed him affection and called him "Dad" from very early on in his relationship with Gena. He testified that he treated Alexandria the same as his own children and that Alexandria was genuinely distraught when he and Gena announced that they were going to separate. Markie and Kayla testified very sincerely that they love and respect their father and they were visibly appalled by Alexandria's allegations.
Respondent's other witnesses, Reverend Stephen Spite and Alexandria's former Sunday School teachers and babysitters, Carmen Hanes and Robin Kent, also testified that Alexandria and Respondent had a very close relationship. They testified that Respondent was well respected in their church community. By juxtaposition, Hanes and Kent testified that Alexandria has a reputation for untruthfulness. Hanes and Kent have known Alexandria her entire life, were her Sunday school teachers and babysat her during the period from approximately 1996 until 2001. They relayed specific instances of Alexandria's untruthfulness: lies about her involvement in making a mess in her bedroom, walking across a parking lot unattended to a playground, pulling down the sides of her sister's portable crib, spilling coffee and throwing away a father's day card. Alexandria also lied once on a camping trip about whether a pair of underwear were her own. Although Kent and Hanes admitted that, in their experience as Sunday School teachers and mothers, it is very common for young children to lie about things to avoid punishment or responsibility, the witnesses' demeanor made it abundantly clear that they believed Alexandria's lying was excessive and abnormal. Even Gena, who testified that Alexandria was not prone to lying, admitted that she discussed Alexandria's behavioral problems, including lying, with Hanes at least every other month during a five-year period - - or thirty times.
Conclusions of Law:
Petitioner must prove by a preponderance of the evidence that Respondent sexually abused Alexandria (see Family Ct Act § 1046 [b] [i]; Matter of Colberdee C., 2 [*4]AD3d 1316 [4th Dept 2003]). Unlike many cases involving allegations of sexual abuse where the court is asked to rely on out-of-court statements of the child which require corroboration, here the alleged victim herself testified (see Matter of Karrie B., 207 AD2d 1002 [4th Dept 1994], lv denied 84 NY2d 812 [1995] [in court testimony of child victim need not be corroborated]). Where, as here, all the evidence is testimonial, the witnesses' credibility is the determinative factor (see Matter of Erinn "G.", 249 AD2d 879 [3d Dept 1998]). Although Alexandria appeared forthright as a witness, after review of the evidence collectively, the Court questions her veracity (see Matter of Anita J.F., 267 AD2d 1044, 1045 [4th Dept 1999], lv denied 94 NY2d 762 [2000] ["[c]onsidering Family Court's unique opportunity to view these witnesses and assess their credibility, we find no abuse of discretion in its determination"]; Matter of Tina L., 255 AD2d 868 [4th Dept 1998] [court declined to disturb Family Court's findings that alleged victim's testimony was not credible]; Matter of Erinn "G.", supra [alleged victim's testimony was not credible where she had a history of prevarication]).
Witnesses Hanes and Kent who have known Alexandria all of her life testified in no uncertain terms that Alexandria lied. The fact that Alexandria told childhood lies alone would not lead the Court to believe that she would lie about such serious allegations against Respondent (see Matter of Melissa P., 261 AD2d 141 [1st Dept 1999], lv denied 95 NY2d 762 [2000]); however, the fact that Alexandria made a prior, false allegation of abuse against Xavier raises a question as to whether her allegations against Respondent are true (see Matter of Fatima M., 16 AD3d 263 [1st Dept 2005]). Alexandria never even admitted that she lied about Xavier until sometime while preparing to testify for this trial.
Certain testimony of Alexandria's was also inconsistent with other evidence before the Court. Alexandria testified that the alleged abuse took place between ten and 100 times but Alexandria initially reported that it happened only more than six or seven times. Alexandria testified that Respondent put his finger in her vagina more than once and that it hurt; a fact never relayed to Way. Alexandria originally stated that she sometimes fell asleep on the bathroom floor after an incident of abuse but she testified that Respondent went into the bathroom and locked the door after he left her bedroom. Alexandria also testified that she never slept in bunk beds at the Maplewood house but Respondent put bunk beds in Alexandria's room approximately one full year before moving to Wheatland. Alexandria testified that she did not remember being babysat by Kent or Hanes and could not recall Hanes teaching her Sunday School; however, even Gena testified as to Alexandria's close relationship with both Kent and Hanes.
Petitioner and the Law Guardian minimize the importance of Alexandria's lies and suggest that Alexandria lied about Xavier only because she was unable to name Respondent as her abuser. However, neither produced an expert witness to show that this is common behavior in child victims of sexual abuse by family members. Indeed, as the Court of Appeals recognized almost 18 years ago, "[t]he psychological and behavioral characteristics and reactions typically shared by victims of abuse in a familial setting are not generally known by the average person and the courts have become increasingly more receptive to admitting expert testimony on the subject" (Matter of Nicole V., 71 NY2d 112, 120 [1987], rearg denied 71 NY2d 890 [1988]; see also Matter of Ryan D., 125 AD2d 160, 166 [4th Dept 1987] ["[e]xpert testimony is admissible to [*5]explain the psychological reactions of child victims of sexual abuse"]). Without an expert opinion on intrafamily child sexual abuse, the Court is compelled to speculate as to what an 11-year-old who was abused by her step-father might think or how she may act (see Matter of Linda K., 132 AD2d 149,158 [2d Dept 1987], lv denied 70 NY2d 616 [1988] ["(i)n cases of sexual abuse in which the trier of fact most likely will decide a case based upon the credibility of the witnesses, expert testimony is an important tool in bolstering the credibility of the child victim (citation omitted)"]). Petitioner's counsel in effect argues that this Court should take judicial notice of child sexual abuse accommodation syndrome. Yet this Court as a matter of law is prevented from doing so.
Both Petitioner and the Law Guardian attempted to use Caseworker Way as an expert. However, the fact that Way had some training in interviewing child victims of sexual abuse does not qualify him as an expert to testify regarding behavioral symptoms consistent with sexual abuse (see Matter of Elizabeth G., 255 AD2d 1010 [4th Dept 1998], lv denied 93 NY2d 814 [1999]). Without expert opinion, the Court again can only speculate as to both why Alexandria would first name Xavier as her abuser and then why Alexandria would wait a year and a half after revealing that Xavier abused her to finally disclose that the abuser was in fact Respondent. If Alexandria was still living in Respondent's home, the circumstances might be different; at the point she made the disclosure, Gena and Respondent were already separated for approximately two and a half years. Additionally, the timing of Alexandria's visit with her biological father, whom she had virtually no relationship with since birth, the very summer before the disclosure of abuse seems more than coincidental and, indeed, may have exasperated any issues with which Alexandria was dealing (see generally Matter of Fatima M., 16 AD3d 263, supra ["the child's psychiatric and behavioral problems may, themselves, have led the child to make false accusations of abuse against her father"]). Also perplexing is why Alexandria would continue to visit Respondent even after Respondent moved to Wheatland and would continue to go to church with Respondent as recently as the very month Alexandria disclosed her allegations against him.
Alexandria is an out-going, out-spoken girl who gets good grades in school. Alexandria's personality and grades remained consistent throughout the entire time that the alleged abuse took place and over the course of time that she made her allegations. Even Gena, Alexandria's own mother, testified that she did not notice a change in Alexandria's behavior. Gena did not even discuss the allegations of abuse with Alexandria after the disclosure. Alexandria's testimony itself was very general and not specific in detail (compare Matter of Elizabeth G., 255 AD2d at 1011 [allegations of abuse were supported by the preponderance of the evidence where "children were able to describe the incidents of abuse in detail, including where and how it occurred"]). When an alleged victim of sexual abuse is able to give explicit details of her encounters there is a stronger probability that her statements are more than mere fabrications (Matter of Linda K., 132 AD2d 149, 160 [2d Dept 1987], lv denied 70 NY2d 616 [1988]).
Respondent was resolute in his denial of the abuse (cf. Matter of Anita J.F., 267 AD2d at 1045). Petitioner attempted to portray Respondent as a hypocrite and as a rash and violent man who used physical punishment against his children. Clearly, Respondent is not perfect but the facts that Respondent fought with an intoxicated stranger at a fireworks display and has a spotty employment history do not equate with [*6]the Petitioner's portrayal. Although Gena and Aunt Sabrina testified that Respondent treated Alexandria differently than his children and was violent, every other witness - - including Alexandria herself - - testified that, albeit a strict disciplinarian, Respondent is a good father and he and Alexandria had a solid relationship. In fact, Markie and Kayla's mother, Carmella, permits increased visitation between Respondent and her children and even Gena encouraged visitation with Respondent. As to the salient issue of abuse, the Court finds Respondent credible.
Respondent admitted that the one instance where he twisted Alexandria's nipple over her clothing was a mistake and was done out of parental frustration after Alexandria snuck up behind him and did the same thing in gist. Way's characterization of Respondent's admission is not entirely inconsistent. Way testified that neither Alexandria nor Kayla mentioned nipple twisting. Kayla testified that she never witnessed Respondent twisting anyone's nipples and appeared shocked when the question was posed. Inexplicably both Petitioner's counsel and the Law Guardian did not elicit testimony about the incident from Alexandria.
Petitioner did not prove by a preponderance of the evidence that Respondent sexually abused Alexandria. The testimony of Alexandria has to be weighed against all the evidence produced at trial. Petitioner's only other proffer of evidence was Way's testimony. Although the Court finds Way credible, Way is not an expert. Way interviewed Alexandria about her allegations of abuse only one time, for less than an hour. Way's interview with Respondent also lasted less than an hour. Respondent testified that Way attempted to pressure him into making certain admissions about his contact with his daughters. Further, clouding the investigation at the onset of the questioning of witnesses, the police may have confused Respondent with another man who has a criminal history. Way never interviewed or even reached Alexandria's biological father and the initial referral in fact indicated that Respondent was Alexandria's biological father. Way was not aware that Alexandria spent the entire summer preceding her disclosure about Respondent with her biological father.
"Allegations of child sexual abuse are among the most serious charges that can be made. It is the court's responsibility to protect children from such conduct where competent evidence indicates that it has occurred; and it is likewise the court's responsibility to protect the accused where no such evidence is offered" (Matter of R.M. Children, 165 Misc 2d 441, 447 [Fam Ct, Kings County 1995]). Here, as described above, there were glaring deficiencies in Petitioner's case and Petitioner did not prove by a preponderance of the evidence that Respondent sexually abused Alexandria and derivatively abused Gabriella. Consequently, the Court must dismiss the petition.
Now, therefore, it is hereby
ADJUDGED that Petitioner did not prove by a preponderance of the evidence that Respondent sexually abused or neglected Alexandria; and it is further
ADJUDGED that Petitioner did not prove by a preponderance of the evidence that Respondent derivatively abused or neglected Gabriella; and it is further
ORDERED that the petition is dismissed.
 Dated this 4th day of August, 2005, at Rochester, New York.

[*7] HON. DANDREA L. RUHLMANN
 FAMILY COURT JUDGE